Rayburn BURRIS, James Walpole, E.L. Freeman, Billi Freeman, William A. Mullins, Paul Gossage, J.A. Ferguson, Bill Hollingsworth, Chrystal Wortham, Brian Hullum, L.L. Kuehner, Clady Everhart, Eddie Legg, Waldemar Walter, Richard Eddy, O.L. Plunkett, Jr., Florene S. Perciful, Donald Deitz, J.C. Reunard, William J. Folsom, Dorothy Smith, James King, E.W. Waldpole, Jr., Willa Jeanne Smith, and A.J. Mullins, Sr., Plaintiffs,

v.

SEWER IMPROVEMENT DISTRICT NO. 147; Frank Daley, Darcia Norwood, Ernest Ekrut, Individually and in their Official Capacities as Commissioners of Sewer Improvement District No. 147; City of Little Rock, Arkansas; and Ken Taylor, in his Official Capacity as Tax Collector of Pulaski County, Arkansas, Defendants,

State of Arkansas, Intervenor.

No. LR–C–89–117.

United States District Court, E.D. Arkansas, W.D.

June 29, 1990.

---

Dan J. Kroha Jr., Little Rock, Ark. for plaintiffs.

Larry D. Vaught, Pulaski Co. Atty., Christopher L. Palmer, Henry Law Firm, Mark H. Allison, Davidson, Horne & Hollingsworth, Thomas M. Carpenter, Mark A. Stodola, City Attorney's Office, Little Rock, Ark., for defendants.

Frank Daly, Little Rock, Ark., pro se.

Rick D. Hogan, Attorney General's Office, Little Rock, Ark., for intervenor.

## MEMORANDUM & ORDER

REASONER, District Judge.

Pending before this Court are plaintiffs' motion for summary judgment, the motion to dismiss and for summary judgment filed on behalf of defendants Sewer Improvement District No. 147, Frank Daley[1], Dar-

---

**1.** On January 26, 1990, defendant Frank Daley filed a letter with the Court stating that he was no longer represented by the same attorneys who were representing the other commissioners of Sewer Improvement District No. 147. Defen-

dant Daley also stated that he wished to withdraw his affidavit in support of defendants' motion for summary judgment.

Even if the affidavit of defendant Daley was not considered, the Court's rulings on the mo-

cia Norwood, and Ernest Ekrut, the motion for summary judgment filed on behalf of the intervenor, the State of Arkansas, and the motion for summary judgment filed on behalf of separate defendant, the City of Little Rock. Defendant Ken Taylor joins in the motions for summary judgment filed on behalf of the other defendants. At a hearing on these motions on January 18, 1990, all parties agreed that there were no genuine issues of fact in dispute in this case, and the case should be disposed on the motions for summary judgment of the parties. Having carefully reviewed the motions, briefs, and affidavits of the parties, the Court agrees that there are no genuine issues of material fact in dispute in this case.

Plaintiffs in this case are residents and property owners in Sewer Improvement District No. 147 (hereinafter "SID 147") located in west Little Rock. SID 147 was created by Little Rock City Ordinance # 15,241 on February 3, 1987, pursuant to Ark.Code Ann. § 14–88–203 (1987). The sewer improvement district was formed for the purpose of connecting the district to the Little Rock municipal sewage system.

Plaintiffs allege in their complaint that the statutes under which SID 147 was formed are unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs also allege that the statutes violate the Due Process Clause of the Fourteenth Amendment and Article 16, § 13 of the Constitution of the State of Arkansas, and that even if the statutes are constitutional, SID 147 was not created in accordance with the Arkansas law.

### I. *Equal Protection Claim*

Ark.Code Ann. § 14–88–203 provides in part:

(a)(1) When persons claiming to be a majority in value, as shown by the last county assessment of the owners of real property, in the whole or any part, of any city or incorporated town, file with the city or town clerk or recorder a petition for the organization of an improvement district for any purposes authorized by § 14–88–202, it shall be the duty of the city or town clerk or recorder to give notice that the petition will be heard at a meeting of the governing body of the city or town named in the notice, which will be held more than fifteen (15) days after the filing of the petition.

Plaintiffs contend that § 14–88–203 violates the Equal Protection Clause because it "grants greater weight and rights to persons based on the dollar amount of their property rather than on the individual person ..." and allows the majority in value of the land owners to impose their will upon the poorer majority.

Defendants argue that the statute does not allow the majority in value to create the district, but rather to initiate the petitioning process so that a district may be created.[2] Defendants maintain that the governing body, in this case the Board of Directors of the City of Little Rock, has the final determination on whether the improvement district is formed.

■ A state statute does not offend the Equal Protection Clause merely because it favors one class of persons over another. In deciding whether the statute in question in this case is violative of the Equal Protection Clause, the Court must determine whether the classification created by the statute is rationally related to a legitimate state interest. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).[3]

---

tions for summary judgment would not be affected. The opinion which defendant Daley stated in his letter to the Court regarding the effectiveness of the notice given to plaintiffs does not create an issue of fact.

2. Sixteen of the twenty-five plaintiffs in this case signed petitions for the formation of SID 147. *See Affidavit of Jane Czech,* Exhibit A, at 1–32 (pleading # 33, filed September 15, 1989).

3. At the hearing on the summary judgment motions on January 18, 1990, plaintiffs' counsel argued that the statute in question must satisfy a rational basis test. The Court agrees that this statute is not subject to review under a strict scrutiny test under the Equal Protection Clause because this statute does not disadvantage a suspect class or impinge upon a fundamental right protected by the Constitution.

■ In *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), the United States Supreme Court recognized that a rational basis existed for weighting votes in the establishment and operation of an improvement district based on the assessed value of the individual's property. The Court in *Salyer* found that the scheme of weighting votes according to assessed land value was rational since the costs of operation of the district were assessed against property owners' land in proportion to the benefits received. *Id.* at 733–35, 93 S.Ct. at 1232–33. In other similar cases, the Supreme Court has recognized the rational basis for allocating votes on some other basis besides the mere number of property owners. *See Ball v. James,* 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981)[4]; *Associated Enterprises, Inc. v. Toltec Watershed Improvement District,* 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973).

The State's rationale in this case for allowing a majority in assessed value of the landowners to petition for the formation of a sewer improvement district is the same rationale as accepted by the Supreme Court in *Salyer.* That is, the costs are assessed according to the benefits received by a landowner as a result of the improvement district. *See* Ark.Code Ann. § 14–90–401 (1987). Such a statutory scheme in which those who will pay the majority of the costs

are allowed to initiate the formation of an improvement district is both equitable and reasonable, especially in view of the limited authority of the improvement district. Moreover, the state has a legitimate interest, as recognized by the Arkansas General Assembly, to establish laws which would not impede the organization of improvement districts, as such districts are essential to the health and welfare of the residents of this State. *See* Ark.Code Ann. §§ 14–88–201 to –212 notes (1987).

The Court also notes that the ability of the majority in assessed value to initiate the formation of a sewer improvement district is not absolute. Under certain circumstances, the governing body (the Board of Directors of the City of Little Rock), a democratically elected body, could have rejected the district despite the petitions. *See* Ark.Code Ann. § 14–88–208 (1987).[5]

Thus, the Court holds that the statutory scheme under which SID 147 was established does not violate the Equal Protection Clause, as the statutory scheme is rationally related to a legitimate state interest. Accordingly, plaintiffs' claim for relief under the Equal Protection Clause is denied.

### II. *Due Process Claim*

■ Plaintiffs also allege that the manner in which the assessments were made to pay for the costs of SID 147 violates the Due Process Clause of the Fourteenth Amendment.[6] Specifically, plaintiffs con-

---

**4.** The Supreme Court in *Ball* also noted that the voters subjected to the disproportionate voting scheme remained qualified voters in the election of state legislators, and therefore had power to change the improvement district. *See Ball,* 451 U.S. at 371 n. 20, 101 S.Ct. at 1821 n. 20.

  The same point can be made in this case. The statutory scheme for allowing the majority in assessed value to initiate an improvement district was established by the legislature of the State of Arkansas. Plaintiffs are equal participants in the election of their state legislators who devised the scheme.

**5.** Ark.Code Ann. § 14–88–208 (1987) provides:

  In any case where the organizers of an improvement district within any town or city have secured signatures for more than fifty percent (50%) in value of owners of real property within the proposed district petitioning for the organization of an improvement district, where it appears from a recommenda-

tion of the city planning commission that the proposed special improvement does not harmonize with the city plan, or that the proposed project would not contribute to public safety and convenience, or to the service and safety of vehicle and pedestrian traffic, and the planning commission recommends denial of the petition, then the city council may properly deny the organization, although the petition contains more than fifty percent (50%) of the signatures of the owners in value of real property within the district.

**6.** Plaintiffs also contend that the assessments made against their property constitutes an illegal taking of their property in violation of the Fifth Amendment. The Court finds this argument to be without merit, as assessments for local improvement districts do not constitute a taking. *See French v. Barber Asphalt Paving Co.,* 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879 (1901).

tend that they did not receive adequate notice of the formation of the district and the assessments, and that the assessments were arbitrarily made.

The formation of SID 147 was initiated by the circulation of petitions in the summer of 1986, which were filed with the Little Rock City Clerk and subsequently presented to the Board of Directors of the City of Little Rock (hereinafter "Board"). Notice of a hearing to be held on August 5, 1986, was mailed to property owners within the district and published twice in the *Arkansas Democrat* newspaper.[7] The August 5, 1986, meeting was postponed, and a subsequent notice of a new hearing date on February 3, 1987, was mailed and published twice in the *Arkansas Gazette* newspaper.[8]

At the February 3, 1987, hearing, objections to the district were heard and the Board approved the formation of SID 147 by Ordinance # 15,241. *See Czech Affidavit*, Exhibit A, at 56–57 (pleading # 33, filed September 15, 1989). The ordinance was published in the *Arkansas Gazette* newspaper on February 10, 1987. *Id.* at 58.

The assessment process began by the appointment of a Board of Assessors. Notice of the appointments was published in the *Arkansas Gazette* newspaper on April 14, 1987. *Id.* at 70. After the assessments were completed, they were filed with the City Clerk on May 25, 1988. *Id.* at 71. Notice of the filing of the assessments was published in the *Arkansas Gazette* newspaper on May 27, 1988. *Id.* at 97. The notice stated:

> Notice of Filing of Assessment
> of Benefits
>
> The assessment of Little Rock Sewer Improvement District No. 147 was filed in my office on the 25th day of May, 1988, and the same is now subject to inspection.
>
> Robbie Hancock for
>
> Jane Czech
>
> City Clerk, City of Little Rock,
>
> Pulaski County, Arkansas

The notice of the filing of the assessments complied in form with Ark.Code Ann. § 14–90–402 (1987).

At the next regular Board meeting on June 7, 1988, the matter of the assessments was considered without objections having been filed or received.[9] No one appeared at the meeting to object to the assessments. *See Czech Affidavit*, Exhibit A, at 98–99 (pleading # 33, filed September 15, 1989). Another Board meeting was held on June 21, 1988, at which time Ordinance # 15,487 was passed adopting the assessments as filed. *Id.* at 101–102. Notice of passage of the ordinance was published in the *Arkansas Gazette* newspaper on June 29, 1988. *Id.* at 103. Plaintiffs had the right, within 30 days after the publication of the ordinance, to commence an action in the Chancery Court of Pulaski County challenging the correctness or validity of the assessments. *See* Ark.Code Ann. § 14–90–804 (1987). No actions were commenced in chancery court. Therefore, the assessments have become liens against the

---

7. The August 5, 1986, hearing was not conducted because two of the property owners who signed petitions for formation of the district withdrew their names from the petitions. Therefore, a reassessment had to be made as to whether a majority in value of the landowners had signed the petitions with the withdrawn names excluded. *See Affidavit of Jane Czech*, Exhibit A, at 38–48 (pleading # 33, filed September 15, 1989).

8. Twenty-three (23) of the twenty-five (25) plaintiffs in this case received notice by mail of the second hearing date. *See Hamilton Affidavit*, Exhibit D, at 1–12 (pleading # 32, filed September 15, 1989). Notices were mailed to the addresses of property owners based on the Pulaski County tax records of real property owners.

9. Ark.Code Ann. § 14–90–501 provides:

> (a) Anyone whose real estate is embraced in a municipal improvement district assessment may file, within ten (10) days from the giving of the notice, with the city clerk in writing, his notice of appeal from the action of the board of assessors in making the assessment of his property.
>
> (b) The appeal shall be heard and disposed of at the next regular meeting of the city council.
>
> (c) On the appeal, the matter shall be heard de novo on the evidence that may be adduced on either side.

properties in SID 147. *See* Ark.Code Ann. § 14–90–805.

In proceedings imposing assessments for improvement districts, the Due Process Clause of the Constitution requires that "at some stage of the proceedings before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal, by publication, or by a law fixing the time and place of the hearing." *Londoner v. City and County of Denver*, 210 U.S. 373, 385–86, 28 S.Ct. 708, 713–14, 52 L.Ed. 1103 (1908). The notice must be "reasonably calculated, under all the circumstances to apprise interested parties of the pendency of the [proceedings] and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The United States Supreme Court has stated, in other contexts, that direct notice is required if the names and addresses of interested parties are reasonably available. *See Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 484–91, 108 S.Ct. 1340, 1344–48, 99 L.Ed.2d 565 (1988); *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 795–800, 103 S.Ct. 2706, 2709–12, 77 L.Ed.2d 180 (1983); *Walker v. City of Hutchinson*, 352 U.S. 112, 116, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956).

In the present case, the property owners (or at least those whose names and addresses were reasonably available from the Pulaski County tax records) did receive direct notice by a mailed letter at the initiation of the proceedings to form the sewer improvement district.[10] The mailed notice apprised property owners, among other things, of the nature of the proposed improvement district and the laws governing formation and operation of the district. With regard to the assessments, the letter referred to the statutes applicable to the assessment process. The letter stated in part that:

> The district will exercise all powers authorized pursuant to Arkansas law, including, but not limited to, those specified in Ark.Stat.Ann. §§ 20–101 through 20–456 and §§ 20–1101 through 20–1159, including the power to levy annual special improvement district assessments upon real property in the district for revenues with which to pay the district's costs. After construction the sewer lines will be the property of the City of Little Rock and will be maintained by the City. Failure to pay assessments would be treated by the district the same as failure to pay general real estate taxes would be treated by the County.

*Hamilton Affidavit*, Exhibit C (pleading # 32, filed September 15, 1989).

In addition to the mailed notice, two notices of the proceedings for the formation of the district were published. Once the proceedings began, notice was published in the paper at the various stages of the proceedings.

In addition, plaintiffs were given opportunities to present objections at hearings at various stages of the proceedings. Specifically, if plaintiffs believed the assessments to be erroneously made, plaintiffs could have challenged the assessments before the Board or plaintiffs could have sued in the Chancery Court of Pulaski County.[11] *See* Ark.Code Ann. §§ 14–90–501, 14–90–804. Therefore, when viewing the statutory scheme for the formation of the district and assessments for the costs of the district as a whole, the Court finds that plaintiffs did receive sufficient notice of the

---

**10.** Based on the facts in this case, the Court does not view the assessment process as an isolated proceeding for which defendants were required to give an additional direct notice by mail. The Court views the establishment, organization, and assessment of SID 147 as one proceeding for which direct notice, in addition to publication notices, were given. The Court makes no determination in this case of whether the publication notice of the filing of the assessments and the publication notice of the ordinance adopting the assessments as filed would be sufficient notice alone to satisfy the Due Process Clause if the making of assessments was the only activity occurring.

**11.** The assessment statutes in question also provide that the assessments may be revised annually and excessive assessments may be reduced. *See* Ark.Code Ann. §§ 14–90–602, 14–90–604 (1987).

pendency of the proceedings so as to comport with the requirements of the Due Process Clause.

### III. State Law Claims

Plaintiffs contend that even if the statutes under which SID 147 was formed are constitutional under the United States Constitution, SID 147 is nonetheless void because it violates the Arkansas Constitution and it was not formed in accordance with Arkansas law.[12] Specifically, plaintiffs argue that the assessments in this case constitute an "illegal exaction" in violation of Article 16, § 13 of the Constitution of the State of Arkansas.[13] Plaintiffs also maintain that the initial petitions for the formation of the district were faulty because the notices upon the petitions were not the proper size as provided by the statute.[14] In addition, plaintiffs argue that because not every plaintiff received notice of the formation of the SID 147 by mail, the district is void.

Defendants acknowledge that the size of the notice on some of the initial petitions was defective, but state that the defect was corrected according to the procedures for correcting errors set forth in Ark.Code Ann. § 14–86–402 (1987). Defendants further maintain that they complied with the notice requirements of Ark.Code Ann. § 14–86–303 by sending the notices to the addresses of property owners as reflected in the Pulaski County tax records.

Having carefully considered the affidavits and exhibits thereto attached to defendants' motions for summary judgment, the Court finds as a matter of law that defendants have complied with the Arkansas law in the organization of SID 147. The defect regarding the size of the notice in the petitions was corrected according to the procedures set forth in the statute.[15] All other notices as required by the statute were made by the district. Furthermore, the various time limitations set forth in the statutes for challenging the organization of the improvement district have expired. Therefore, plaintiffs are now barred from challenging any alleged defects in the formation of the district.

It is, therefore, ORDERED that defendants' and the intervenor's motions for summary judgment and to dismiss are granted, and plaintiffs' motion for summary judgment is denied. Judgment will be entered in favor of defendants, and plaintiffs' complaint will be dismissed. Defendants' pending motion to strike plaintiffs' demand for a jury trial is now moot.

It is SO ORDERED.

12. Plaintiffs allege in their response to defendants' motion to dismiss and for summary judgment that the Arkansas Freedom of Information Act was violated by the Board conducting secret meetings regarding the improvement district. Plaintiffs' complaint fails to allege a claim under the Arkansas Freedom of Information Act, nor did plaintiffs seek to amend their complaint to add such a claim. Therefore, the Court will not consider this argument at this late stage in these proceedings.

13. Plaintiffs' claim that the assessments constitute an "illegal exaction" in violation of the Arkansas Constitution appears in paragraphs 7 and 23 of plaintiffs' complaint. Plaintiffs do not raise this claim again in their motion for summary judgment or their response to defendants' motion. Nonetheless, the Court is convinced that the assessments do not constitute "illegal exactions" in violation of Article 16, § 13 of the Arkansas Constitution. *See Mackey*

*v. McDonald,* 255 Ark. 978, 504 S.W.2d 726 (1974).

14. Ark.Code Ann. § 14–86–201(a) provides:

Each and every petition circulated in the state for the establishment of an improvement district of whatever nature shall contain on the front and near the top thereof the following notice, which shall be in letters at least one-fourth inch (¼″) in height and shall be enclosed in a box in substantially the following form:

NOTICE

YOUR SIGNATURE HEREON SHOWS THAT YOU FAVOR THE ESTABLISHMENT OF AN IMPROVEMENT DISTRICT. IF THE DISTRICT IS FORMED, YOU MAY BE CHARGED FOR THE COST OF THE IMPROVEMENTS.

15. *See Affidavit of Carolyn Staley* (pleading # 75, filed January 9, 1990).