Rayburn BURRIS; Donald R. Deitz; Richard Eddy; Clady Everhart; J.A. Ferguson; William J. Folsom; Billi Freeman; E.L. Freeman; Paul Gossage; Bill Hollingsworth; Brian Hullum; James King; L.L. Kuehner; Eddie Legg; A.J. Mullins, Sr.; William A. Mullins; Florence S. Perciful; O.L. Plunkett, Jr.; J.C. Reunard; Dorothy Smith; Willa Jeanne Smith; E.W. Waldpole, Jr.; James Walpole; Waldemar Walter; Chrystal Wortham, Appellants,

v.

CITY OF LITTLE ROCK; Frank Daley, Ernest Ekrut and Darina Norwood, individually and in their official capacity as Commissioners of Sewer Improvement District No. 147; Ken Taylor, in his official capacity as Tax Collector of Pulaski County, Arkansas, Appellees,

State of Arkansas (Intervenor Below), Appellee.

No. 90–2275EA.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1991.

Decided Aug. 15, 1991.

Dan J. Kroha, Little Rock, Ark., for appellant.

Thomas M. Carpenter, argued, Little Rock, Ark., for appellee; Mark Stodola and Thomas M. Carpenter, Little Rock, Ark., on brief.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Raymond Burris and twenty-four other Little Rock property owners appeal the district court's order granting summary judgment against them in a § 1983 action chal-

lenging assessments against their property to pay for sewer improvements. The appellants argue that the assessments are invalid under the due process and equal protection clauses of the Constitution and under Arkansas law. Because we conclude that the district court lacked jurisdiction over the case, we vacate and remand for dismissal.

## I.

In 1986 a petition to establish a sewer improvement district in the appellants' neighborhood was circulated and filed with the city clerk. The purpose of the proposal was to connect the district to Little Rock's municipal sewer system. As required by Ark.Code Ann. §§ 14–86–303 and 14–88–203, notice that the petition had been filed was published in the Arkansas Gazette and sent to each landowner in the district by certified mail. Both the letter and the published notice also informed them of the time and place of a hearing to consider the proposal. In addition, the letter warned that if an improvement district was formed, it would exercise the power to levy annual special assessments on the real property in the district, and that failure to pay the assessments "would be treated by the district the same as failure to pay general real estate taxes would be treated by the County." The letter cited the provisions of the Arkansas Code that govern municipal improvement districts.

On February 3, 1987, the Board of Directors of the City of Little Rock (Board) met to consider the proposal. Three residents of the district attended and voiced their views. Pursuant to statute, the Board determined that the petition had been signed by owners of a majority of the property in the district, measured by assessed value, and passed an ordinance offi-

cially establishing Sewer Improvement District No. 147 (District 147). *See* Ark.Code Ann. § 14–88–207 (1987).[1] The Board then appointed assessors, who calculated the projected benefits of the sewer improvements to each piece of property and filed a report with the city clerk. As required by Ark.Code Ann. § 14–90–402, the clerk then published a notice in the local newspaper that the assessment list was available for inspection at her office. Several weeks later, the Board passed an ordinance approving the proposed assessments. The text of the ordinance was then published in the newspaper, as required by Ark.Code Ann. § 14–90–803. When the ordinance was passed, the assessments became liens on the property pursuant to Ark.Code Ann. § 14–90–805.

Some time later, after the thirty-day period for appealing the assessments had expired, the appellants received bills for their assessments. They sued in federal court under 42 U.S.C. § 1983, alleging violations of due process and equal protection. They contended (1) that their property had been taken without due process of law because they did not receive notice of what the assessment against their property would be in time to challenge it; and (2) that the Arkansas statutes governing formation of municipal improvement districts deny equal protection because they allow a district to be created by owners of a majority of the property in value against the will of the other residents of the district, even if the other residents are more numerous. The majority in value may also be able to shift the bulk of the cost of the improvements to the poorer majority in numbers because property is assessed according to anticipated benefit from the improvement, not according to property value. The complaint

---

1. Section 14–88–207 provides, in relevant part:
   (a)(1) At the time named in the notice, the municipal governing body shall meet ... and shall make a finding as to whether the petition is signed by a majority in assessed value of the property owners.
   . . . .
   (B)(i) If it finds that a majority has signed the petition, it shall then be the duty of the

governing body, by the same ordinance, to establish the district.
Ark.Code Ann. § 14–88–207. *See also* Ark.Code Ann. § 14–88–208 (providing that the municipal governing body need not establish the district if the city planning commission recommends against it on one of several specified grounds).

also raised several state law claims.[2] The taxpayers asked for a declaratory judgment on the constitutional questions, including a declaration that the formation of District 147 was void. They also requested an injunction preventing collection of the assessments and forbidding any further assessments until the constitutional violations were remedied.

Both sides moved for summary judgment. The district court granted summary judgment to the defendants, holding that (1) under the rational basis test and Supreme Court precedent, allowing a majority in assessed value to form an improvement district, subject to approval by the Board, was constitutionally permissible; and (2) the appellants received adequate notice for due process purposes because they were notified by certified mail of the hearing about the formation of the district, and the court did not believe that separate notice of the assessments themselves was required, as the establishment of the district and the assessments were all part of one proceeding for which notice need only be given once. The court also ruled for the defendants on the state law claims. *Burris v. Sewer Improvement Dist. No. 147*, 743 F.Supp. 655 (E.D.Ark.1990). This appeal followed.

## II.

■ The Tax Injunction Act, 28 U.S.C. § 1341, forbids federal courts from exercising jurisdiction over certain kinds of claims involving state taxation: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (1988). The prohibition extends to declaratory judgment actions as well as to suits for injunctive relief, *California v. Grace Brethren Church*, 457 U.S. 393, 411, 102 S.Ct. 2498, 2509, 73 L.Ed.2d 93 (1982); *Coon v. Teasdale*, 567 F.2d 820, 822 (8th Cir.1977), and has been applied specifically

to § 1983 suits in which the plaintiff seeks an injunction, *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). Special assessments are taxes for purposes of § 1341. *Tramel v. Schrader*, 505 F.2d 1310, 1315–16 (5th Cir.1975); *Chicago, St. P., M. & O. R.R. v. City of Randolph*, 122 F.Supp. 302, 303 (D.Neb.1954); *Lake Lansing Special Assessment Protest Ass'n v. Ingham County Bd. of Commrs.*, 488 F.Supp. 767, 772–73 (W.D.Mich.1980); see *Williams v. City of Dothan*, 745 F.2d 1406, 1411 (11th Cir. 1984).

■ The next question under § 1341 is whether state law affords a "plain, speedy and efficient remedy." A state-court remedy is "plain, speedy and efficient" only if it provides the taxpayer with a full hearing and judicial determination at which he or she may raise any and all constitutional objections to the tax, *Grace Brethren*, 457 U.S. at 411, 102 S.Ct. at 2509 (quoting *Rosewell*, 450 U.S. at 514, 101 S.Ct. at 1229), subject to eventual review by the Supreme Court, see *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 301, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943). The adequacy of the state remedy is measured according to procedural rather than substantive criteria. *Rosewell*, 450 U.S. at 512, 101 S.Ct. at 1228. As long as the taxpayer's federal rights receive full consideration, the remedy is adequate. See *id.* at 514–15, 101 S.Ct. at 1229–30 (rejecting taxpayer's argument that state's failure to pay interest to successful litigant in tax refund suit made remedy inadequate, because the availability of interest related to the substance of the remedy).

■ There were several remedies available to the appellants in the Arkansas courts. They could have challenged the assessment by filing a notice of appeal within ten days after the assessment list was filed and appearing before the Board at its next regular meeting to contest the assessment. Ark.Code Ann. § 14–90–501 (1987). Even after the Board passed the

**2.** Because of our disposition of the case, it is not necessary to discuss the substance of these claims.

ordinance establishing the assessment, the appellants could have challenged it in the Chancery Court of Pulaski County within thirty days of the publication of the ordinance in the newspaper. Ark.Code Ann. § 14–90–804 (1987). The appellants, of course, argue that these remedies were not really available because they did not learn of the assessment in time to use them.[3] Even so, there were other remedies available after those in Title 14 had expired. The appellants could have sued in chancery court to enjoin the assessment under § 16–113–306, which specifically targets illegal tax assessments. Section 16–113–306 provides, in relevant part: "The judge of the chancery court for any county may grant injunctions and restraining orders in all cases of illegal or unauthorized taxes and assessments by county, city, or other local tribunals, boards or officers." Ark.Code Ann. § 16–113–306 (1987). They could also have obtained a declaratory judgment under Ark.Code Ann. § 16–111–103. Federal constitutional claims may, of course, be raised in state court. *See, e.g., Cypress Creek Farms v. L'Anguille Improvement Dist. No. 1,* 274 Ark. 518, 626 S.W.2d 357 (1982) (due process challenge to notice of hearing to consider formation of improvement district); *Cherokee Village Homeowners Protective Ass'n v. Cherokee Village Rd. & St. Improvement Dist. No. 1,* 248 Ark. 1055, 455 S.W.2d 93 (1970) (due process and non-delegation clause challenge to formation of improvement district); *Lessenberry v. Little Rock–Pulaski Drainage Dist. No. 2,* 211 Ark. 1046, 204 S.W.2d 554 (1947) (due process challenge to

method of assessment). Furthermore, § 1983 suits may be brought in the Arkansas courts. *See Virden v. Roper,* 302 Ark. 125, 788 S.W.2d 470, 472 (1990), and cases cited therein. These remedies should still be open to the appellants.[4]

Therefore, because this is an action to enjoin the assessment and collection of taxes, and because the appellants have a plain, speedy, and efficient remedy in the Arkansas courts, we hold that the Tax Injunction Act bars federal jurisdiction in this case. Although the parties have apparently overlooked § 1341, we are obliged to raise it sua sponte, as defects in subject matter jurisdiction cannot be waived. *See Illinois Cent. R.R. v. Howlett,* 525 F.2d 178, 180 (7th Cir.1975); Fed.R.Civ.P. 12(h)(3).

### III.

We vacate the judgment below and remand to the district court with directions to dismiss the case for lack of subject matter jurisdiction.

---

**3.** The letter sent to the appellants by certified mail when the petition for establishment of the district was pending notified them of the statutory provisions that apply to special assessments, including provisions governing appeal rights. If the appellants had looked up the statute, they would have known that publication in the newspaper was the only notice they would get that the assessment list had been filed, and they would have been on notice to watch for the item in the paper.

This reasoning would be no less applicable even if the letter had not called the relevant statute to the appellants' attention. Property owners are charged with knowledge of laws that affect them, particularly laws governing taxation. *Texaco, Inc. v. Short,* 454 U.S. 516, 532 &

n. 25, 102 S.Ct. 781, 793 & n. 25, 70 L.Ed.2d 738 (1982); *see also Ross v. Martin,* 800 F.2d 808, 811–12 (8th Cir.1986) ("The procedures for protesting and appealing tax assessments are clearly set forth in [the Arkansas Code], and ... all persons are generally presumed to know the law.").

**4.** Even if the Arkansas courts should now refuse to hear these claims on the ground of laches, that would not make Arkansas' remedy not "plain, speedy or efficient"; a taxpayer's failure to take advantage of a remedy does not render it insufficient. *See Aluminum Co. of Am. v. Department of the Treasury,* 522 F.2d 1120, 1123–26 (6th Cir.1975). The relevant question is whether the remedy was available originally.