Joseph KERNS and Kathleen Kerns, William M. Torney and Lois A. Torney, Maureen Moyer, and John D. Coffman and Martha Coffman, on behalf of themselves and other similarly situated property owners, 9 Del.C. § 6519 persons and other persons being assessed, Plaintiffs,

v.

Dale R. DUKES, individually and as Sussex County Government President and Council President, George J. Collins, William D. Stevenson, Sr., George B. Cole and Ralph E. Benson, individually and as Sussex County Council Members, Robert L. Stickels, individually and as Sussex County Administrator, Robert T. Wood, individually and as Sussex Coun-

ty Engineer, Christopher A.G. Tulou, individually and as Delaware Department of Natural Resources and Environmental Control Secretary, Gerald L. Eposito, individually and as a Director of Delaware Department of Natural Resources and Environmental Control, and Edwin H. Clark, II, individually and as then Secretary of Delaware Department of Natural Resources and Environmental Control, Defendants.

Civil Action No. 96–113 MMS.

United States District Court,
D. Delaware.

Nov. 8, 1996.

Francis J. Trzuskowski, James F. Kipp, and Francis J. Schanne, of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, DE, for plaintiffs.

Carl Schnee, and Patricia A. Pyles, of Prickett, Jones, Elliott, Kristol & Schnee,

Wilmington, DE, Dennis L. Schrader, and Veronica O. Faust, of Wilson, Halbrook & Bayard, Georgetown, DE, for defendants Dale R. Dukes, George J. Collins, William D. Stevenson, Sr., George B. Cole, Ralph E. Benson, Robert L. Stickels and Robert W. Wood.

Kevin P. Maloney, Keith A. Trostle, and David L. Ormond, State of Delaware, Department of Justice, Dover, DE, for State defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Plaintiffs in this putative class action have filed a complaint against various Sussex County officials (the "County defendants") as well as members of the Delaware Department of Natural Resources and Environmental Control (the "DNREC defendants" or "State defendants") in connection with the creation of the West Rehoboth Expansion of the Dewey Beach Sanitary Sewer District. Plaintiffs are landowners in the area of the new sewer district who have been forced to abandon their septic systems and connect to the new sewer district, for which they have been assessed fees and charges.

Plaintiffs assert claims under 42 U.S.C. § 1983 for violation of their procedural and substantive due process rights and under 33 U.S.C. § 1365(a)(2), a citizen-suit provision of the Clean Water Act. Jurisdiction is based on the existence of a federal question, under 28 U.S.C. § 1331.[1] In summary, plaintiffs allege that the County defendants did not follow the proper procedures before acting to create the sewer district, most importantly, by failing to submit the proposal for vote by the local residents. Plaintiffs further contend that the County defendants' decision to expand the sewer district was arbitrary and capricious. Plaintiffs also argue that the

DNREC defendants failed to cause certain environmental and cost reviews to be performed. Plaintiffs seek injunctive and declaratory relief as well as damages.

Before the Court are defendants' motions for dismissal based on lack of subject matter jurisdiction, or, alternatively, to abstain under the doctrine of *Pullman* abstention, pending resolution of an uncertain issue of state law. The Court will dismiss plaintiffs' complaint based on equitable restraint grounded upon federal-state comity considerations, and, alternatively, lack of subject matter jurisdiction by reason of the Tax Injunction Act.

## II. FACTS

There is a genuine risk that nomenclature might obfuscate the crux of the dispute. The dispute centers around the creation of the "West Rehoboth Expansion of the Dewey Beach Sanitary Sewer District." While called an "expansion," the plaintiffs argue that it is a new district contiguous to the Dewey Beach Sanitary Sewer District.

The following facts are as alleged in the complaint. The district was created by Sussex County Council Resolution No. R–013–90, adopted on March 22, 1990. Docket Item ("D.I.") 1, at 8. The proposal for this new district was never put up for a vote. *Id.* at 9. The proposal had been the subject of a public hearing on November 2, 1989, where objections to it were raised. *Id.* at 7. A proposal for a similar expansion district had failed twice before when put up for a vote, the most recent failure occurring in 1986. *Id.*

Following the adoption of the resolution, the DNREC defendants entered into a Memorandum of Understanding with Sussex County, which set up a short construction schedule and which contributed to an alleged failure to perform environmental and cost reviews of the new sewer district project, as required by federal environmental laws. D.I.

---

1. Plaintiffs initially alleged subject matter jurisdiction of this Court based on diversity of citizenship, 28 U.S.C. § 1332. However, they have since conceded the issue, acknowledging that only two of the named plaintiffs in this potential class action are citizens of Maryland, while the rest of the named plaintiffs and all the defen-

dants are citizens of Delaware. Under those circumstances, diversity jurisdiction does not exist. *See In re Sch. Asbestos Litig.*, 921 F.2d 1310, 1317 (3d Cir.1990), *cert. denied sub nom U.S. Gypsum Co. v. Barnwell Sch. Dist.*, 499 U.S. 976, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991).

1, at 9. Plaintiffs urged that to conceal the alleged defects, the DNREC defendants in August 1993, made a "Finding of No Significant Impact" to the environment and a "Finding of No Practicable Alternative" to impacts on Wetlands. *Id.* at 11. Construction contracts were awarded in May 1993, for approximately $70,000,000. *Id.* at 12.

In December 1995, the County defendants held a rate hearing. D.I. 1, at 13. Once again, objections to the rates and the construction were voiced. *Id.* Overriding the objections, the Sussex County Council unanimously adopted the proposed rates. *Id.* The charges attributed to the new sewer district are as follows:

- $202.00 annual service charge;

- $2.48 per front foot annual collection fee;

- $2.83 per front foot annual transmission and treatment fee;

- $2,808.00 one-time connection charge for connections which occur after the first year;

- $100 permit fee.

*Id.*

The first of such payments became due on February 1, 1996. *Id.* at 14. Plaintiffs filed their complaint on March 4, 1996.

### III. PLAINTIFFS' CLAIMS

A brief summary of plaintiffs' claims is essential to understanding the motions before the Court. Plaintiffs' first count, brought under 42 U.S.C. § 1983, alleges violation of plaintiffs' constitutional rights to procedural due process. Specifically, plaintiffs state the County defendants, acting under color of state law, created the sewer district and are forcing plaintiffs to connect to it and pay for it without lawful authority and without procedural due process of law. Their most specific claim is that the County defendants did not hold an election regarding the sewer proposal, allegedly in violation of Delaware law.[2] Further, plaintiffs assert, the DNREC defendants created a construction schedule and an environmental review that was in violation of federal procedures and procedural due process.

In Count II, plaintiffs seek relief under 42 U.S.C. § 1983 for violation of their substantive due process rights. They allege the County defendants, acting under color of state law, have acted arbitrarily and capriciously, and without regard to public health, safety and welfare in creating the new sewer district. Such actions, the plaintiffs say, have impinged upon plaintiffs' use and enjoyment of their real property by mandating a financial charge and legal encumbrance as well as limiting, controlling and charging for use of their property. Additionally, plaintiffs urge, the DNREC defendants have acted arbitrarily and capriciously in connection with construction and environmental reviews. Plaintiffs allege the DNREC defendants were delegated and thus became responsible for environmental and cost review under Federal environmental law. Plaintiffs state that the DNREC defendants acted arbitrarily and capriciously, and in bad faith, in making a "Finding of No Significant Impact" ("FNSI") and "Finding of No Practicable Alternative" ("FNPA").

In Count III, plaintiffs invoke, as an additional basis of support for their claims against the DNREC defendants, a citizen-suit provision of the Clean Water Act, 33 U.S.C. § 1365(a)(2).

In Count IV, plaintiffs allege pendent state claims which are not relevant to the motion before the Court.

Plaintiffs seek the following relief:
- a declaration that the sewer district is void;
- injunctive relief against the county's requirement that all residents of the sewer district connect to the sewer system;
- injunctive relief against further construction of the new district;
- injunctive relief against assessments and other charges;
- notice of the injunctive relief;
- attorneys fees and costs under 42 U.S.C. § 1988;

---

**2.** While the word "election" is used in the statute, what is involved is a vote by the citizenry to ascertain whether it wants sewer service with its concomitant cost. *See* Del.Code Ann. tit. 9 § 6506.

- damages;
- any other appropriate legal or equitable relief.

*See* D.I. 35, at 9–10.

## IV. DEFENDANTS' MOTIONS TO DISMISS

Pursuant to a *Stipulation and Order* of June 17, 1996, three issues were addressed at oral argument held on October 16, 1996: (A) whether the Tax Injunction Act, 28 U.S.C. § 1341, acts to bar the Court's jurisdiction in this case; (B) whether the Court should stay this matter pending resolution of an unresolved issue of state law, under the doctrine of *Pullman* abstention; (C) whether plaintiffs may sue under the Clean Water Act, 33 U.S.C. § 1365(a)(2). As noted above, the Court will dismiss plaintiffs' action based on considerations of comity and the Tax Injunction Act. As a result, *Pullman* abstention and the applicability of the Clean Water Act are not considered.

## V. Discussion

1. Comity

■ For more than a century, federal courts have been cognizant of the need for restraint when faced with a case that has the potential of interfering with state tax systems. Notwithstanding that plaintiffs before them may have been grievously wronged, federal courts have recognized that a greater wrong may be done if they become involved. In 1871, the Supreme Court opined:

> It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay ... may derange the operations of government, and thereby cause serious detriment to the public.

*Dows v. City of Chicago,* 78 U.S. (11 Wall.) 108, 110, 20 L.Ed. 65 (1870).

More recently, U.S. Supreme Court Justice Brennan explained:

> The special reasons justifying the policy of federal noninterference with state tax collection are obvious.... If federal [remedies] were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency.

*Perez v. Ledesma,* 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 698 n. 17, 27 L.Ed.2d 701 (1971) (Brennan, J. concurring in part and dissenting in part).

This notion of comity was reflected in the Tax Injunction Act of 1937,[3] but was not limited in any way by it's passage. *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 110, 102 S.Ct. 177, 183, 70 L.Ed.2d 271 (1981). Prior to the Act's passage, federal courts declined to become involved in state tax cases seeking equitable relief based on principles of equitable restraint, i.e., that courts of equity will not act when an adequate remedy at law exists. *Id.* at 107–08, 102 S.Ct. at 181–82. The Supreme Court recently re-affirmed the vitality of comity in *Fair Assessment in Real Estate,* when it held federal courts may not entertain suits brought under 42 U.S.C. § 1983 for damages in connection with state tax suits. 454 U.S. at 111, 102 S.Ct. at 183–84. The Supreme Court stated:

> The Court's ... [precedents] ... demonstrate[ ] not only the post-Act vitality of the comity principle, but also its applicability to actions seeking a remedy other than injunctive relief. The focus was not on the specific form of relief requested, but on the fact that "in every practical sense [it] operate[d] to suspend collection of the state taxes until the litigation [was] ended."

*Id. (quoting Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 299, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943)).

---

**3.** "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The Court focused on two factors in determining that maintenance of the plaintiffs' suit would act to suspend collection of state taxes. First, it noted that plaintiffs could not recover under 42 U.S.C. § 1983 unless there first was a determination that plaintiffs' constitutional rights were violated. "In effect, the district court must first enter a declaratory judgment.... We are convinced that such a determination would be fully as intrusive as the equitable actions that are barred by principles of comity." *Fair Assessment in Real Estate,* 454 U.S. at 113, 102 S.Ct. at 185.

The Court further noted that "the very maintenance of the suit itself would intrude on the enforcement of the state scheme" by haling state tax collection officials into federal court to defend their actions. *Id.* at 114, 102 S.Ct. at 185. The fact that the plaintiffs had named as defendants the County executive, the Director of Revenue, the Tax Assessor and members of the State Tax Commission, was particularly persuasive to the Court that the suit would effectively halt tax collection. *Id.*

Plaintiffs in this case by the various forms of relief they have requested essentially ask this Court to excuse them from paying any of the costs associated with the sewer district. They do not deny that their suit involves state taxes, however, they urge that this lawsuit is about more than just taxes. Nevertheless, both factors considered important by the Supreme Court in *Fair Assessment in Real Estate* are present here as well. First, plaintiffs here could not collect damages without a determination by this Court that their constitutional rights were violated. Indeed, plaintiffs seek a declaratory judgment that the sewer district is void. Second, plaintiffs have named as defendants many County officials, as in *Fair Assessment in Real Estate,* namely, the Sussex County Government President, three members of the Sussex County Council, the Sussex County Administrator and the Sussex County Engineer.

It is clear to the Court that any involvement on its part with respect to the payment of the sewer special assessments will result in the exact type of interference in state affairs that federal courts have long eschewed. Therefore, the Court on comity grounds alone, will decline to adjudicate this case.

## 2. Tax Injunction Act

■ The Tax Injunction Act prohibits the Court from taking jurisdiction to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Act reflects the principles of comity discussed above. *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* —— U.S. ——, ——, 115 S.Ct. 2351, 2354, 132 L.Ed.2d 509 (1995). The Supreme Court has read the Act to prohibit federal district courts from issuing injunctive or declarative relief in connection with state taxes. *Id.,* at ——, 115 S.Ct. at 2354; *California v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 2507–08, 73 L.Ed.2d 93 (1982).

■ Under the Tax Injunction Act, district courts are deprived of jurisdiction over a case where a "tax under State law" is at issue, and where the state provides a "plain, speedy and efficient remedy" for aggrieved taxpayers. *See Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371, 374, 376 (3d Cir.1978). Application of the Tax Injunction Act is not a matter of discretion for the Court; rather, the Act creates a "non-waivable jurisdictional bar that absolutely precludes federal courts from assessing the validity of state or local taxation schemes." *Keleher v. New England Tel. & Tel. Co.,* 947 F.2d 547, 549 (2d Cir.1991); *accord Hardwick v. Cuomo,* 891 F.2d 1097, 1103–04 (3d Cir.1989).

The plaintiffs do not dispute that both of the above-noted elements implicating the Tax Injunction Act are present. Plaintiffs argue instead that their challenge to the tax is secondary to their claims with regard to the unlawful formation of the sewer district and their forced connection to sewer lines constructed within it. D.I. 35, at 17–22. In short, the plaintiffs say the suit should not be barred from federal court by reason of the Act, because of their complaint that the sew-

er district was formed in violation of their constitutional rights.

Plaintiffs' argument reflects recognition by the courts that not every lawsuit affecting revenue collection by a government should be dismissed from federal court based on the Tax Injunction Act. Instead, courts have tried to articulate some point at which the tax or fiscal consequences to the State become "secondary" or too "attenuated" to serve as justification for dismissal for lack of jurisdiction because of the Act. In making this determination, some courts have focused on the plaintiffs' "primary purpose" in bringing the suit, *see Pendleton v. Heard,* 824 F.2d 448 (5th Cir.1987); others focus on the practical effect of the lawsuit on the local government's fisc. *See Kimmey v. H.A. Berkheimer, Inc.,* 376 F.Supp. 49, 54 (E.D.Pa.1974) (dismissing civil rights action challenging local tax collection law despite plaintiffs' challenge to administration of law as opposed to validity of actual tax), *aff'd,* 511 F.2d 1394 (3d Cir.1975).

■ Whether a federal court must decline jurisdiction by reason of the Tax Injunction Act is best understood by analyzing the case law on a continuum. At one end are cases in which the government is attempting to collect a regularly assessed tax, such as a property tax, and plaintiffs challenge the tax in such a way as to prevent its collection. Federal courts will always find they lack jurisdiction in such cases, recognizing that such cases represent the prototypical request for federal interference with state taxes.

For example, the Supreme Court in *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), held the district court was without jurisdiction to entertain a constitutional challenge to a state's collection of unemployment taxes. The plaintiffs sought relief by way of filing a declaratory judgment action. While a declaratory judgment is not barred by the technical wording of the Tax Injunction Act, the Court found the declaratory judgment action barred by the portion of the Act that prohibited actions that "suspend or restrain" state taxes. 457 U.S. at 408, 102 S.Ct. at 2507–08.

Similarly, in *Kimmey v. H.A. Berkheimer, Inc.,* plaintiffs objected to a tax collection law that allowed local tax collectors to distrain personal property of delinquent taxpayers prior to a hearing on liability for such taxes. The court found the suit barred by reason of the Tax Injunction Act, despite plaintiffs' argument that they challenged not the validity of the taxes, but the manner in which the statute was administered. "In order to grant plaintiffs the relief they request the Court perforce would be required to enjoin the collection of the taxes and thus this relief clearly would be precluded by § 1341," the court stated. 376 F.Supp. at 54.

■ Next on the continuum are cases in which the government has expended or proposes to expend funds on projects, and the plaintiff has been hurt, or will imminently be hurt, by reason of a governmental statute or ordinance creating an assessment or lien. It such cases federal courts will also decline jurisdiction because the severe risk to the public fisc posed by potential inability to recoup funds expended or to be expended implicates the policies behind the Tax Injunction Act. This is true even in cases in which a constitutional challenge is mounted.

For example, in *Burris v. City of Little Rock,* 941 F.2d 717 (8th Cir.1991), a case that is strikingly similar on its facts to the one *sub judice,* the court dismissed on Tax Injunction Act grounds a suit brought by property owners under 42 U.S.C. § 1983 challenging sewer assessments, seeking a declaration that the formation of the sewer district was void and an injunction preventing collection of further assessments. The City had not yet begun sewer construction but the assessments already had become liens on residents' property.

Likewise, in *Carson v. City of Fort Lauderdale,* 293 F.2d 337 (5th Cir.1961), plaintiffs opposed a proposal by the City to build a sewer system to be financed by special assessments, on the basis that the funds for such construction were to have been collected under a 10% utility tax already assessed. At the time of the suit, no taxes or charges had been levied, but the City was proposing such taxes and charges. The court found it had no jurisdiction to hear the case:

[P]laintiffs are first seeking a declaration as to what their rights are, and then ... they seek a mandatory injunction to require defendant to make a full disclosure of the use of the utility tax money in the past and to enjoin the collection of the proposed assessments and monthly service charges ...

293 F.2d at 338. The court concluded "Congress has prohibited Federal Courts from taking jurisdiction in cases such as this." *Id.*

As a final example, in *Group Assisting Sewer Proposal–Ansonia v. City of Ansonia,* 448 F.Supp. 45 (D.Conn.1978), homeowners challenged a sewer assessment under the Fourth and Fourteenth Amendments to the U.S. Constitution. It is unclear from the opinion whether the funds already had been expended or not, but it was clear that taxpayers were going to finance the project in one way or another. The court noted, "City tax assessments have been characterized as a 'very sensitive local area,' ... and absent any other compelling factor, federal interference is both unseemly and unnecessary in view of existing state review procedures." 448 F.Supp. at 46 (*quoting Jones v. Township of North Bergen,* 331 F.Supp. 1281, 1286 (D.N.J.1971)).

In contrast is the case in which a proposal to spend public money has been made, but no public money has been expended from the public fisc and plaintiffs are not in imminent danger of being assessed. In such a case, a court has found the Tax Injunction Act does not bar a federal court from exercising jurisdiction. In *Pendleton v. Heard,* 824 F.2d 448 (5th Cir.1987), plaintiffs sued under the Voting Rights Act with respect to the practice of the County Board of Supervisors of publishing notice of intended bond issues, and then withdrawing such proposals upon receipt of public protest, instead of holding a vote as required by state statute. While not entirely clear, it appears no bond issues remained pending. The Fifth Circuit Court of Appeals reversed the district court's dismissal based on the Tax Injunction Act, finding instead that the primary purpose of plaintiffs' challenge was vindication of their right to vote and not to dispute the bond issues. The court stated:

[T]he purpose of this suit is the vindication of voting rights. Any effect on the issuance of bonds or the subsequent imposition of taxes is incidental. Assuming arguendo that the Tax Injunction Act would apply to attacks on bond issues in general, it does not apply to the Voting Rights claims in this case.

824 F.2d at 452.

Finally, at the opposite end of the continuum from cases interfering with the collection of regularly assessed taxes, are cases in which the governing body has not and is not proposing to spend any funds, but through allegedly unlawful governmental action seeks to increase its revenue by subjecting its citizens to further tax levies.

In *Superior Oil Co. v. City of Port Arthur,* 535 F.Supp. 916 (E.D.Tex.1982), a challenge was brought regarding the annexation of certain land to bring it within the city's taxing powers. The court disregarded the city's position that it would provide necessary services to the newly-annexed land, finding, in the words of that court, "[t]his was merely a land grab." 535 F.Supp. at 918. Under such circumstances, the court allowed the suit; finding specifically that Superior Oil's suit would not affect the city's taxing ability.

This suit is not a challenge to a tax law, but instead, it attacks the validity of the municipal annexation which brings the plaintiff's property within the ambit of that ordinance. Because Port Arthur's ad valorem ordinance is not being questioned, there is no danger of disruption to the City's taxing scheme. Equitable relief for [the plaintiff], in this instance, would not intrude on the enforcement of the City's taxing system.

535 F.Supp. at 919.

Another example is *Harvey & Harvey, Inc. v. Delaware Solid Waste Authority,* 600 F.Supp. 1369 (D.Del.1985). This Court considered whether the Tax Injunction Act should apply to a case in which plaintiffs, in the business of solid waste disposal, challenged Delaware state regulations under the Commerce Clause and the Equal Protection Clause. Plaintiffs complained that the regulations in effect mandated that all solid waste

originating in Delaware be disposed of in Delaware, notwithstanding the fact that it could be done more cheaply out-of-state. Defendants argued that the case should be dismissed from federal court on the premise that plaintiffs claims would restrain the collection of user fees charged by the state in conjunction with the disposal of waste.

The court held that Defendants' allegation was not sufficient to invoke the Tax Injunction Act. Noting that the plaintiffs "have not directly challenged the Authority's power to charge fees or the amount of those fees," the court stated:

> If the challenged Regulations are declared unconstitutional, the Authority might lose revenue which would have to be made up from other sources. However, the Tax Injunction Act does not preclude the federal courts from hearing all cases in which the outcome will have a secondary effect on the financial affairs of a state or an agency thereof.

*Id.* at 1376.

Under the above analysis of case law, the Court finds the present case most closely aligned with cases in which the government has spent, or is proposing to spend, public money and has or will imminently assess plaintiffs in an attempt to recoup such money. *See Burris* 941 F.2d 717; *Carson,* 293 F.2d 337; *Group Assisting Sewer Proposal,* 448 F.Supp. 45. In all those cases the federal court found it had no jurisdiction. This outcome is consistent with the true policies of the Tax Injunction Act, which, as described above, strives to protect the fiscal integrity of state and local governments. Moreover, such an approach relieves the Court of a hair-splitting, subjective analysis of the primary purpose of a plaintiff's lawsuit.

This approach is supported by the Supreme Court's opinion in *Fair Assessment in Real Estate,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271, discussed above, where the Court held the principle of federal-state comity prohibited a federal court from entertaining a damages action brought against government officials in relation to real property assessment. While the Court did not decide whether the Tax Injunction Act itself would bar such a claim, it found that a damages action was sufficiently intrusive into state affairs as to be precluded by comity. The Court stated: "In short, petitioner's action would 'in every practical sense operate to suspend collection of the state taxes' ... a form of federal-court interference previously rejected by this Court on principles of federalism." 454 U.S. at 115, 102 S.Ct. at 185. *See also Raskauskas v. Town of Bethany Beach,* 555 F.Supp. 783 (D.Del.1983).

Mindful of the fact that Sussex County already has invested $70,000,000 in the sewer district and the plaintiffs have been assessed taxes, the Court finds that permitting the present case to go forward will result in substantial federal court interference in the County's revenue collecting ability. The Court alternatively dismisses the case based on the Tax Injunction Act.

## VI. CONCLUSION

The Court therefore concludes that the plaintiffs' complaint must be dismissed. This holding does not put an end to plaintiffs' chances of prevailing on their lawsuit in the state court system. All arguments made by plaintiffs before this Court may be made in a state court. This Court merely holds on comity grounds it should exercise equitable restraint and alternatively, the Court lacks jurisdiction by reason of the Tax Injunction Act.

An order will issue consistent with this opinion.