# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No. 96-2913

———————

State of Missouri ex rel.         *
Missouri Highway and              *
Transportation Commission,        *
                                  *
          Appellant,              *
                                  *
     v.                           *
                                  *
Michael Cuffley, individually     *
and as the Unit Recruiter of      *   Appeals from the United States
the KKK; Knights of the Ku        *   District Court for the
Klux Klan, *                      Eastern District of Missouri.
                                  *
          Appellees.              *
                                  *
--------------------------        *
                                  *
Arkansas State Highway            *
Commission; United States of      *
America,                          *
                                  *
          Amici Curiae.           *

———————

No. 96-3740

———————

State of Missouri ex rel.         *
Missouri Highway and              *
Transportation Commission,        *
                                  *
          Appellant,              *
                                  *
     v.                           *
                                  *
Michael Cuffley, individually     *
and as the Unit Recruiter of      *
the KKK; Knights of the Ku        *
Klux Klan, *
                                  *
          Appellees.              *

Submitted:  April 14, 1997

Filed:  May 7, 1997

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.
_____


BOWMAN, Circuit Judge.


Nearly three years ago, Michael Cuffley, a representative of the Missouri Realm of the Knights of the Ku Klux Klan (the Klan), filed an application with the Missouri Highway and Transportation Commission (the State) for the Klan to participate in Missouri's Adopt-A-Highway program. The State neither approved nor denied the Klan's application; instead, the State filed this action in federal district court, seeking a declaratory judgment that it was not required to approve the Klan's application.  The Klan counterclaimed, seeking a declaratory judgment and a writ of mandamus ordering the State to allow it to participate in the Adopt-A-Highway program.  Following discovery, the District Court granted the Klan's motion for summary judgment, concluding that "any decision on the part of the [State] to exclude the Klan's participation in the Missouri Adopt-A-Highway Program will be a violation of the Klan's First Amendment right to free speech."  Missouri ex rel. Missouri Highway & Transp. Comm'n v. Cuffley, 927 F. Supp. 1248, 1265 (E.D. Mo. 1996).  The court later awarded attorney fees to the Klan pursuant to 42 U.S.C. § 1988(b) (1994).


In this Court, the State challenges the District Court's decision on the merits and, in a consolidated appeal, the award of attorney fees to the Klan.  The parties and amici have submitted extensive briefs, a voluminous record, and lengthy oral arguments.

In their eagerness to resolve this dispute, however, the parties--and, apparently, the District Court--have overlooked two significant jurisdictional roadblocks. We conclude that this action involves neither a properly presented federal question nor a controversy that is ripe for review. Accordingly, we vacate the judgment of the District Court and remand the case with instructions to dismiss it.

## I.

Only a brief recitation of the factual context of this case is necessary. The State's Adopt-A-Highway program is designed to reduce the State's litter-control expenses by enlisting volunteers to clean up highway rights-of-way. A brochure produced by the State represents that "[a]ny person, organization, club or governmental agency can adopt a section of state highway." App. at 213. The State erects a sign acknowledging the participation of each person or group that adopts a section of highway.

In May 1994, the Klan applied to participate in the Adopt-A-Highway program. It is unclear from the record whether the Klan requested a specific section of highway, but the parties' attention eventually centered on a stretch of Interstate 55 in south St. Louis. Without approving or denying the Klan's application, the State authorized its attorneys in June 1994 to begin this litigation.

At the time the Klan filed its application, the State had only a series of guidelines regarding participation in the Adopt-A-Highway program. The only relevant guideline suggested that "individuals or organizations which historically or presently advocate unlawful violence" should be excluded from the program.

App. at 216.  The State later promulgated official regulations governing the program.  These regulations, which went into effect after the District Court took the parties' cross-motions for summary judgment under submission, permit the State to exclude applicants whose participation would be counterproductive to the program; applicants that discriminate on the basis of race, religion, color, national origin, or disability; and applicants with a history of unlawfully violent or criminal behavior.  See Mo. Code Regs. Ann. tit. 7, § 10-14.030(2) (effective July 30, 1995).  For good measure, the regulations also state that the program "is not intended as a means of providing a public forum for the participants to use in promoting name recognition or political causes."  Id. § 10-14.030(1).

The District Court concluded that the Klan's participation in the Adopt-A-Highway program involved elements of protected speech and that the program probably constituted a designated or limited public forum.  See 927 F. Supp. at 1254-58.  The court held that the State's attempt to exclude the Klan from the program was both content- and viewpoint-based, so that the State's action was unconstitutional, regardless of the type of forum. See id. at 1259-64.  Accordingly, the court granted the Klan's motion for summary judgment and entered a declaratory judgment in the Klan's favor. See id. at 1265.[1]

---

[1]As the District Court recognized, other courts have reached conflicting conclusions in similar adopt-a-highway cases.  See Texas v. Knights of the Ku Klux Klan, 58 F.3d 1075 (5th Cir. 1995) (affirming grant of declaratory judgment authorizing state to deny Klan's application); Knights of Ku Klux Klan v. Arkansas State Highway & Transp. Dep't, 807 F. Supp. 1427 (W.D. Ark. 1992) (holding that state's denial of Klan's application violated Klan's constitutional rights).

Thus far in this case, the parties have not disputed the subject-matter jurisdiction of the federal courts.[2] Nevertheless, subject-matter jurisdiction cannot be waived, and it is our duty to raise the issue sua sponte. See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); Boatmen's First Nat'l Bank v. Kansas Pub. Employees Retirement Sys., 57 F.3d 638, 640 n.4 (8th Cir. 1995); Burris v. City of Little Rock, 941 F.2d 717, 721 (8th Cir. 1991).

## II.

We begin with the question of statutory jurisdiction. It has long been understood that the federal Declaratory Judgment Act, now codified at 28 U.S.C. § 2201 (1994), is a procedural statute, not a jurisdictional statute. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 15-16 (1983); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950). Accordingly, federal jurisdiction is proper only if this case comes within an express congressional grant of jurisdiction. Because it is clear from the record that the parties are not of diverse citizenship, we look to federal-question jurisdiction. The federal courts have jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1994). This action quite obviously turns on the First Amendment, but it is not enough that such a constitutional issue is present in the case. The "well-pleaded complaint" rule further limits federal-question jurisdiction to those cases in which the plaintiff's own complaint establishes that the action arises under

---

[2]In the preliminary statement required by Fed. R. App. P. 28(a)(2) and 8th Cir. R. 28A(i)(3), the State suggests that the District Court had jurisdiction of this case pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994). As we explain below, § 2201 is remedial, not jurisdictional.

federal law.  See Franchise Tax Board, 463 U.S. at 10; Gully v. First Nat'l Bank, 299 U.S. 109, 113 (1936); Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908).

Since this is a suit seeking a declaratory judgment, there is an additional twist to the jurisdictional inquiry.  Because an action for declaratory relief is merely a substitute for a more traditional action for damages or injunctive relief, we must consider whether a well-pleaded complaint in such a traditional action would present a federal issue.  See Franchise Tax Board, 463 U.S. at 15-16; Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 248 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.") (dictum); Skelly Oil, 339 U.S. at 671-74; 10A Charles Alan Wright et al., Federal Practice and Procedure: Civil § 2767, at 744-45 (2d ed. 1983) ("[I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.  On the other hand, if the federal issue would inhere in the claim on the face of the complaint that would have been presented in a traditional damage or coercive action, then federal jurisdiction exists over the declaratory judgment action.") (footnote omitted).

We therefore look to see what sort of traditional damage or coercive action could come out of this standoff between the State and the Klan.  In so doing, we will sidestep, for the time being, the ripeness problem that we consider in the next section of this opinion by assuming that the State had denied the Klan's application before coming to court.  In such circumstances, the Klan could bring an action under 42 U.S.C. § 1983 alleging that the

State violated its First Amendment rights by preventing it from participating in the Adopt-A-Highway program.[3] Such a lawsuit, of course, would arise under federal law and would be within the jurisdiction of the federal courts.

Were our inquiry at an end here, we would conclude that this case is properly in federal court, but there remains one additional issue. It is significant that this action was brought by the State; to see why, we must examine the Supreme Court's decision in Franchise Tax Board. That case involved attempts by the California Franchise Tax Board "to collect unpaid state income taxes by levying on funds held in trust for the taxpayers under an ERISA-covered vacation benefit plan." Franchise Tax Board, 463 U.S. at 4. The plan refused to honor the levies, claiming that ERISA preempted state law and prohibited the plan from complying with the levies. The Tax Board went to court, seeking a declaratory judgment that its actions were valid and not preempted by ERISA.[4] When the case reached the Supreme Court, the Court undertook the

_____

[3]This imaginary exercise requires a further assumption: that a § 1983 suit by the Klan against the State would be permissible. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989) (holding that a state is not a "person" for purposes of § 1983); Quern v. Jordan, 440 U.S. 332, 338-45 (1979) (holding that § 1983 does not abrogate a state's Eleventh Amendment immunity). To simplify our inquiry, we shall assume that a § 1983 action would be permissible despite these potential difficulties. See Franchise Tax Board, 463 U.S. at 20 & n.21 (avoiding possible difficulties posed by Tax Injunction Act while undertaking a similar analysis).

[4]The Tax Board filed its action in state court, and the plan removed it to federal court. This procedural difference between Franchise Tax Board and the instant case, which was filed originally in federal court, is of no matter. With respect to federal-question cases, the removal jurisdiction and the original jurisdiction of the federal district courts are coextensive. See Franchise Tax Board, 463 U.S. at 7-8; 28 U.S.C. § 1441(a)-(b) (1994).

sort of analysis we have performed above and determined that ERISA provided a plan such as the Construction Laborers Vacation Trust with a federal cause of action to enjoin acts or practices contrary to ERISA.  See id. at 19-20 & n.20.  To this point, then, Franchise Tax Board and our case are functionally identical:  each is a declaratory action brought by a state agency in a situation in which the declaratory defendant could have brought a coercive action in federal court (bearing in mind our assumptions).  In an ordinary situation, therefore, these declaratory suits would be properly within the federal-question jurisdiction of the district courts.  The Supreme Court, however, concluded unanimously that the Tax Board's suit was different:

> We have always interpreted what Skelly Oil called "the current of jurisdictional legislation since the Act of March 3, 1875," 339 U.S., at 673, with an eye to practicality and necessity. . . .  There are good reasons why the federal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law.  States are not significantly prejudiced by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation.  They have a variety of means by which they can enforce their own laws in their own courts, and they do not suffer if the pre-emption questions such enforcement may raise are tested there.  The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties . . . as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes.  It did not go so far as to provide that any suit against such parties must also be brought in federal court when they themselves did not choose to sue.  The situation presented by a State's suit for a declaration of the validity of state law is sufficiently removed from the spirit of necessity and careful limitation of district court jurisdiction that informed our statutory interpretation in Skelly Oil and Gully to convince us that, until Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States courts.

<u>Id.</u> at 20-22 (footnotes omitted).

There is a minor distinction between <u>Franchise Tax Board</u> and the instant case: that case involved a conflict between a federal statute and a state statute, while the case at bar presents a conflict between the federal Constitution and state administrative action. Nevertheless, we see no reason why the holding in <u>Franchise Tax Board</u> should not apply to the case before us. (<u>Franchise Tax Board</u> may be summarized neatly as holding that "there is no federal jurisdiction of a suit by a state for a declaration of the validity of state law even though the party being sued by the state could have raised the same issue in federal court in an action for coercive relief." 13B Charles Alan Wright et al., <u>Federal Practice and Procedure: Jurisdiction</u> § 3566, at 97 (2d ed. 1984).) The reasoning adopted by the Court in <u>Franchise Tax Board</u> is equally applicable here. The State is not prejudiced by an inability to sue in federal court before the Klan decides whether it will challenge the State's denial of its application; in fact, should the Klan decide not to sue, the entire litigation may be avoided. If the Klan does sue, we see no reason why the State's exposure would be any greater for having waited until the Klan came to court.

<u>Franchise Tax Board</u> may be based, as the Court recognized, on "reasons involving perhaps more history than logic," <u>Franchise Tax Board</u>, 463 U.S. at 4, but whatever its basis, it is binding upon us.[5] In the only case we have located that is even remotely

---

[5]Others have criticized the Court more harshly than it criticized itself. <u>See</u> 13B Wright et al. § 3566, at 96 n.40 (quoting Edward H. Cooper as saying that <u>Franchise Tax Board</u> "neatly and logically carried out a chain of reasoning that is simply wrong").

similar to the instant case, a federal district court reached the same conclusion we do today: a declaratory judgment suit brought by a state to uphold the constitutionality of its action is not within the federal-question jurisdiction of the federal courts. See International Soc'y for Krishna Consciousness v. City of Los Angeles, 611 F. Supp. 315, 318-19 (C.D. Cal. 1984).[6]

## III.

Ripeness also presents a problem for the State. As we have stated, the State never acted on the Klan's application, choosing instead to seek advance court approval of its plans to deny the application. Because the critical facts involved in this dispute are hypothetical and speculative, we conclude that the dispute is not ripe for review, and so the District Court was without jurisdiction to decide it.

The case-or-controversy requirement of Article III applies in declaratory actions, just as it does in coercive actions. See Wycoff Co., 344 U.S. at 242; Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 325 (1936); Marine Equip. Management Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993).

> The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its

---

[6]The Fifth Circuit's adopt-a-highway case apparently arose in the same posture as the case before us. See Texas, 58 F.3d at 1077. Because the opinion in that case contains no mention of federal-question jurisdiction or ripeness concerns, we do not consider it to be authoritative on these issues.

effects felt in a concrete way by the challenging parties."

Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 200 (1983) (quoting Abbott Lab. v. Gardner, 387 U.S. 136, 148-49 (1967)).  "The basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'"  Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (quoting Railway Mail Ass'n v. Corsi, 326 U.S. 88, 93 (1945)); see also Vorbeck v. Schnicker, 660 F.2d 1260, 1266 (8th Cir. 1981) (noting that only "a definite and concrete controversy" satisfies the requirements of Article III), cert. denied, 455 U.S. 921 (1982).

In particular, we may not render "an opinion advising what the law would be upon a hypothetical state of facts."  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937).  When we are considering "free speech issues [of] fundamental and far-reaching import," it is particularly inappropriate to attempt to decide a case on an "amorphous and ill-defined factual record."  Renne v. Geary, 501 U.S. 312, 324 (1991).

To demonstrate just how academic and abstract the voluminous record before us is, we summarize the legal arguments offered by the State at various points in this case:  (1) there is no speech or expressive activity involved in the Adopt-A-Highway program at all; (2) even if speech is involved in the program, it is solely the speech of the State; (3) even if the program does involve expressive activity by participants, the program is a nonpublic forum, and the State has presented a reasonable, viewpoint-neutral justification for excluding the Klan; or (4) even if the program is a limited public forum or a traditional public forum, the State has

presented a compelling state interest for excluding the Klan. We recognize, of course, that alternative legal arguments such as these are likely to be present in any First Amendment dispute, whether ripe or not.

What is crucial in a First Amendment suit such as this one, however, are the reasons for the action taken by the state actor, for this type of First Amendment question is extremely fact-intensive. Consider, then, all of the possible justifications for denying the Klan's application that have surfaced in this case: (a) the Klan discriminates in its membership on the basis of race, and a Missouri executive order prohibits the use of any state facility to promote discriminatory practices; (b) a federal statute and a federal highway regulation require the State to prevent discrimination in all of its programs, and the State could lose its federal funding if the Klan participated in the program; (c) the Klan has a history of violence, unlawful activity, racial intimidation, and discriminatory practices; (d) the State does not wish to appear to endorse the Klan's message; (e) permitting the Klan to participate and posting the Klan's name on a sign would make the State a joint participant in the Klan's discriminatory activities, in violation of the Fourteenth Amendment; (f) Interstate 55 is a route heavily traveled by black students in the St. Louis area's voluntary interdistrict busing program, and a sign identifying the Klan along that route will undermine the operation of the court-ordered desegregation program; (g) the Klan's application is in reality an attempt to legitimize the organization by associating it with the State, or perhaps an attempt to increase the Klan's membership; (h) the State will not be able to provide a safe atmosphere for interstate travel if the Klan participates in the program, and use of the highways for interstate commerce and national defense purposes may be impeded; and (i) the State may

-12-

exclude an applicant on the basis of the applicant's beliefs.[7]  When we add to this mix the Klan's arguments that the State's application process involves unconstitutional standardless discretion and that any justification proffered by the State is only a pretext for discrimination based on the Klan's stated beliefs, we have something approximating the broad scope of the arguments presented to the District Court.

On this wide-open record, the State seeks a declaration that will somehow enable it to deny the Klan's application and to bind the Klan to that decision.  Because we cannot determine what reasons the State actually will choose to support its denial, however, it is apparent that the most the State could possibly be entitled to is a declaration that reads, in essence:  "Provided you select a constitutional justification, you are not required to approve the Klan's application."  As the Supreme Court stated in Wycoff Co. (in which Wycoff sought a declaration, in no particular context, that its business constituted interstate commerce), "One naturally asks, 'So what?'"  Wycoff Co., 344 U.S. at 244.

The precise line between ripe actions and premature actions is not an easy one to draw, see Babbitt, 442 U.S. at 297, but it is clear that this case is well on the hypothetical, advisory, not-fit-for-decision side of that line.  A federal court is neither required nor empowered to wade through a quagmire of what-ifs like the one the State placed before the District Court in this case. Until the State acts on the Klan's application and creates a concrete record for judicial consideration, this dispute is simply

---

[7]This last justification, a rather surprising one, surfaced in the deposition of a State employee whom the State designated to speak for it.  See App. at 783-84, 833-34.  Not surprisingly, the Klan argues that this admission alone is enough to support the District Court's decision.

-13-

not ripe for review.  If the State is unsure how to handle the Klan's application, it should seek the advice of its legal staff, not the advice of a federal judge.

**IV.**

Finally, we turn to the question of attorney fees.  Because the District Court was without jurisdiction to decide the merits of this case, it was also without jurisdiction to award fees.  See Keene Corp. v. Cass, 908 F.2d 293, 298 (8th Cir. 1990).  In any event, because we order this case dismissed on jurisdictional grounds, the Klan is not a prevailing party on the merits.  See id.  Accordingly, the District Court's award of fees must be vacated.

**V.**

The judgment of the District Court is vacated, and the case is remanded with instructions to dismiss the action.  The order of the District Court awarding attorney fees to the Klan is also vacated.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

-14-