**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3519

_____

| | | |
|---|---|---|
| The People of the State of California; | * | |
| The Public Utilities Commission of | * | |
| the State of California, | * | |
| | * | |
| Petitioners, | * | |
| | * | |
| Bell Atlantic Corporation; Bellsouth | * | |
| Corporation; Pacific Telesis Group; | * | |
| SBC Communications, Inc.; Maryland | * | |
| Public Service Commission; US West, | * | |
| Inc.; US Telephone Association; | * | On Petitions for Review of |
| Arkansas Public Service Commission; | * | an Order of the Federal |
| ALLTEL Telephone Services | * | Communications Commission. |
| Corporation; Ameritech Corporation; | * | |
| Oregon Public Utility Commission; | * | |
| North State Telephone Company; | * | |
| Western Alliance; Independent | * | |
| Telephone and Telecommunications | * | |
| Alliance; Roseville Telephone | * | |
| Company; Concord Telephone | * | |
| Company; Rock Hill Telephone | * | |
| Company; Public Utilities | * | |
| Commission of the State of Hawaii; | * | |
| American Public Communications | * | |
| Council, Inc.; ICG Telecom Group, | * | |
| Inc.; Minnesota Public Utilities | * | |
| Commission; Southern New England | * | |
| Telephone Company; The Ad Hoc | * | |
| Coalition of Telecommunications | * | |
| Manufacturing Companies; Pacific | * | |

Telecom, Inc.; Minnesota Independent    *
Coalition; Kentucky Public Service    *
Commission; Kansas Corporation    *
Commission; Public Service    *
Commission of the State of Wyoming;    *
Rhode Island Public Utilities    *
Commission; Public Service    *
Commission of Wisconsin;    *
State of Texas; Alabama Public    *
Service Commission; Citizens    *
Telephone Company of Kecksburg;    *
New Mexico State Corporation    *
Commission; Public Service    *
Commission of the State of Montana;    *
GTE Service Corporation; Utah    *
Department of Commerce, Division of    *
Public Utilities; Public Service    *
Commission of Utah; Public Service    *
Commission of the State of South    *
Carolina; Tennessee Regulatory    *
Authority; Aging Forum, Inc., doing    *
business as National Silver Haired    *
Congress; U.S. Coalition on Aging;    *
College for Living; Council of Silver    *
Haired Legislatures; Missouri    *
Alliance of Area Agencies on Aging;    *
Missouri Association for the Deaf;    *
Missouri Council of the Blind;    *
Presidents' Club for    *
Telecommunications Justice;    *
Paraquad, Rural Advocates for    *
Independent Living; Services for    *
Independent Living; Public Utilities    *
Commission of the State of Colorado;    *
Department of Public Utilities of the    *
Commonwealth of Massachusetts;    *
Oklahoma Corporation Commission;    *

-2-

Public Service Commission of the State of Connecticut, Department of Public Utility Control; New York Telephone Company; New England Telephone and Telegraph Company,

  Intervenors on Appeal,

  v.

Federal Communications Commission; United States of America,

  Respondents,

AT&T Corp.; Competitive Tele-communications Association; MFS Communications Company, Inc.; Airtouch Communications, Inc.; Nextlink Communications, L.L.C.; Sprint Spectrum, L.P.; National Cable Television Association, Inc.; MCI Telecommunications Corporation; Sprint Corp.; Cox Communications, Inc.; Vanguard Cellular Systems, Inc.; Western Wireless Corporation; American Communications Services, Inc.; KMC Telecom, Inc.; The Competition Policy Institute; Association for Local Telecommunications Services; Cellular Telecommunications Industry Association; GST Telecom, Inc.; ACC Corp.; General Communication, Inc.; Telecom-munications Resellers Association;

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

-3-

Consumer Federation of America; Ad          *
Hoc Telecommunications Users                  *
Committee; Information Technology             *
Industry Council; America's Carriers          *
Telecommunication Association;                 *
Jones Intercable, Inc.;                             *
Telecommunications, Inc.; Teleport           *
Communications Group, Inc.; Rural            *
Telecommunications Group; Allied             *
Associated Partners; Geld Information        *
Systems; Pronet, Inc.; Winstar                   *
Communications, Inc.; U.S. One               *
Communications Services;                          *
Comcast Corporation; Frontier                   *
Corporation; Anaheim, California              *
Public Utilities Department; City of           *
Long Beach, California; City of                 *
Manassas, Virginia; Cable &                     *
Wireless, Inc.; National Association of      *
State Utility Consumer Advocates;            *
Time Warner Communications                    *
Holdings, Inc.; Personal                           *
Communications Industry                          *
Association; Excel                                   *
Telecommunications, Inc.; Worldcom,        *
Inc., Paging Network, Inc.; Nextwave        *
Telecom, Inc.; Small Cable Business         *
Association; Metrocall, Inc.; Texas           *
Office of Public Utility Counsel,              *
                                                          *
        Intervenors on Appeal,                   *
     _____                       *
                                                          *
Consumers' Utility Counsel Division,         *
Georgia Governor's Office of                    *
Consumer Affairs; Honorable John D.        *
Dingell; Honorable W.J. (Billy)        *

-4-

Tauzin; Honorable Rick Boucher;                *
Honorable Dennis Hastert,                       *
                                                *
       Amici on Behalf of Petitioner,           *
                                                *
Honorable Thomas J. Bliley, Jr.;                *
Honorable Ernest F. Hollings;                   *
Honorable Ted Stevens; Honorable                *
Daniel K. Inouye; Honorable Trent               *
Lott; Honorable Edward J. Markey,               *
                                                *
       Amici on Behalf of Respondent.           *
                                                *
                                                *
          _____                           *
                                                *
          No. 96-4080                           *
          _____                           *
                                                *
Bell Atlantic-Delaware, Inc.; Bell              *
Atlantic-Maryland, Inc.; Bell                   *
Atlantic-New Jersey, Inc.; Bell                 *
Atlantic-Pennsylvania, Inc.; Bell               *
Atlantic-Virginia, Inc.; Bell Atlantic-         *
Washington, D.C., Inc.; Bell Atlantic-          *
West Virginia, Inc.,                            *
                                                *
       Petitioners,                             *
                                                *
Maryland Public Service Commission;             *
SBC Communications, Inc.; New York              *
Telephone Company; New England                  *
Telephone and Telegraph Company; US             *
Telephone Association; GTE Service              *
Corporation; US West, Inc.; Bellsouth           *
Corporation; Bellsouth                          *
Telecommunications, Inc.; Ameritech             *
Corporation,                                    *

-5-

Intervenors on Appeal,      \*
      \*
    v.      \*
      \*
Federal Communications Commission;  \*
United States of America,      \*
      \*
    Respondents,      \*
      \*
Sprint Corp.; Competitive      \*
Telecommunications Association;    \*
Telecommunications Resellers    \*
Association; AT&T Corp.; National   \*
Cable Television Association, Inc.; GST  \*
Telecom, Inc.; MFS Communications  \*
Company, Inc.; KMC Telecom, Inc.;  \*
ACC Corp.; Winstar Communications,  \*
Inc.; MCI Telecommunications    \*
Corporation; America's Carriers    \*
Telecommunication Association; Jones  \*
Communications, Inc.; Airtouch    \*
Communications, Inc.; Cox      \*
Communications, Inc.,      \*
      \*
    Intervenors on Appeal.    \*
      \*
      \*
_____      \*
      \*
    No. 96-4082      \*
_____      \*
      \*
Pacific Telesis Group,      \*
      \*
    Petitioner,      \*
      \*
Maryland Public Service Commission;  \*
SBC Communications, Inc.; New York  \*

Telephone Company; New England   *
Telephone and Telegraph Company; US   *
Telephone Association; GTE Service   *
Corporation; US West, Inc.; Bellsouth   *
Corporation; Bellsouth   *
Telecommunications, Inc.; Ameritech   *
Corporation,   *
  *
   Intervenors on Appeal,   *
  *
   v.   *
  *
Federal Communications Commission;   *
United States of America,   *
  *
   Respondents,   *
  *
Sprint Corp.; Competitive   *
Telecommunications Association;   *
Telecommunications Resellers   *
Association; AT&T Corp.; National   *
Cable Television Association, Inc.; GST   *
Telecom, Inc.; MFS Communications   *
Company, Inc.; KMC Telecom, Inc.;   *
ACC Corp.; Winstar Communications,   *
Inc.; MCI Telecommunications   *
Corporation; America's Carriers   *
Telecommunication Association; Jones   *
Communications, Inc.; Airtouch   *
Communications, Inc.; Cox   *
Communications, Inc.,   *
  *
   Intervenors on Appeal.   *
   _____   *
  *
   No. 96-4083   *
   _____   *

-7-

SBC Communications, Inc.,                    *
                                             *
        Petitioner,                          *
                                             *
Maryland Public Service Commission;          *
New York Telephone Company; New              *
England Telephone and Telegraph              *
Company; US Telephone Association;           *
GTE Service Corporation; US West, Inc.;*
Bellsouth Corporation; Bellsouth             *
Telecommunications, Inc.; Ameritech          *
Corporation,                                 *
                                             *
        Intervenors on Appeal,               *
                                             *
        v.                                   *
                                             *
Federal Communications Commission;           *
United States of America,                    *
                                             *
        Respondents,                         *
                                             *
Sprint Corp.; Competitive                    *
Telecommunications Association;              *
Telecommunications Resellers                  *
Association; AT&T Corp.; National            *
Cable Television Association, Inc.; GST      *
Telecom, Inc.; MFS Communications            *
Company, Inc.; KMC Telecom, Inc.;           *
ACC Corp.; Winstar Communications,          *
Inc.; MCI Telecommunications                 *
Corporation; America's Carriers              *
Telecommunication Association; Jones         *
Communications, Inc.; Airtouch               *
Communications, Inc.; Cox                     *
Communications, Inc.,                        *
                                             *
        Intervenors on Appeal.               *

-8-

_____

Submitted:  April 16, 1997

Filed: August 22, 1997
_____

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.
_____


HANSEN, Circuit Judge.


Before us are the petitions of the California Public Utilities Commission and various providers of local telecommunications services seeking review of certain rules issued by the Federal Communications Commission (FCC or Commission) pursuant to the Telecommunications Act of 1996.[1]  The petitioners and the intervenors supporting them (collectively "petitioners") argue that the FCC exceeded its jurisdiction in part in issuing dialing parity rules that encompass some purely intrastate telecommunications services, and they assert that one of the Commission's rules on numbering administration violates the terms of the Act.  Consistent with our decision in the related case, Iowa Utils. Bd. v. FCC, No. 96-3321 and consolidated cases, 1997 WL 403401 (8th Cir. July 18, 1997), we vacate the FCC's dialing parity rules in part, concluding that the FCC exceeded the scope of its jurisdiction.  We find that the petitioners' challenge to the FCC's numbering administration rule, however, is not ripe for review.


I.


_____

[1]Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified as amended in scattered sections of Title 47, United States Code).

One of Congress's goals in passing the Telecommunications Act of 1996 was to open the local telephone markets to competition. See Telecommunications Act of 1996, Pub. L. No. 104-104, purpose statement, 110 Stat. 56 (1996). To accomplish this objective, the Act imposes several duties on the current providers of local telecommunications service (known as "incumbent local exchange carriers" or "incumbent LECs") including the duties to provide competing carriers with interconnection and unbundled access to the incumbents LECs' networks and to allow competing carriers to resell any telecommunications service that the incumbent LECs provide to their subscribers on a retail basis. 47 U.S.C.A. § 251(c)(2)-(4) (West Supp. 1997).[2] The FCC issued numerous rules in its First Report and Order[3] purporting to implement these as well as other provisions of the Act. In our earlier decision in Iowa Utils. Bd., we reviewed many of the Commission's regulations contained in its First Report and Order and held, in part, that the FCC exceeded its authority in promulgating rules governing the prices that incumbent LECs may charge competing carriers for interconnection, unbundled access, and resale of services. See Iowa Utils. Bd. 1997 WL 403401, at *9.

In the present case, the petitioners challenge several portions of the Commission's Second Report and Order,[4] which contains additional FCC comments and regulations regarding provisions of the Telecommunications Act of 1996 that were not addressed in the First Report and Order. In particular, the petitioners challenge the

---

[2]All references in this opinion to sections and subsections of the Telecommunications Act of 1996 in West's United States Code Annotated (U.S.C.A.) are to the 1997 supplement.

[3]First Report and Order, Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, CC Docket No. 96-98 (Aug. 8, 1996).

[4]Second Report and Order, Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, CC Docket No. 96-98 (Aug. 8, 1996) [hereinafter Second Report and Order].

FCC's rules implementing the Act's requirement that all local exchange carriers provide dialing parity to competing providers of local and long-distance service.  See 47 U.S.C.A. § 251(b)(3) (statutory dialing parity requirement); 47 C.F.R. §§ 51.205-51.215 (1996) (FCC dialing parity rules). Additionally, the petitioners challenge the FCC's rule, 47 C.F.R. § 52.17, implementing the Act's mandate that the costs of creating telecommunications numbering administration arrangements be shared by all telecommunications carriers on a competitively neutral basis.  See 47 U.S.C.A. § 251(e)(2) (statutory numbering administration requirement).

## II.

We have jurisdiction to review final orders of the FCC pursuant to 28 U.S.C. § 2342(1) (1994) and 47 U.S.C. § 402(a) (1994).  Courts of appeals may set aside agency rules that (1) conflict with the plain meaning of a statute, (2) are unreasonable interpretations of ambiguous statutes, or (3) are the product of arbitrary or capricious action by the agency.  See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45 (1984).

### A.  Dialing Parity Rules

The petitioners argue that the FCC exceeded its jurisdiction in promulgating its dialing parity rules, 47 C.F.R. §§ 51.205-51.215.  Dialing parity is a technological capability that enables a telephone customer to route a call over the network of the customer's preselected carrier without having to dial an access code of extra digits.  See 47 U.S.C.A. § 153 (15).  The petitioners claim that the FCC did not have authority to issue these dialing parity rules to the extent that the rules involve intraLATA telecommunications.  The petitioners rely heavily on section 2(b) of the Communications Act of 1934, 47 U.S.C. § 152(b) (1994), to support their jurisdictional

attack on the FCC's dialing parity rules. Section 2(b) provides that "nothing in this chapter shall be construed to apply or to give the [FCC] jurisdiction with respect to . . . charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communications service. Id. The petitioners assert that even though the Commission's dialing parity rules are not phrased explicitly in terms of "intrastate" or "interstate," but rather use the terms "intraLATA," "interLATA," "local," and "toll" to describe the telecommunications they regulate, 47 C.F.R. §§ 51.205-51.215, the intraLATA aspects of the rules overwhelmingly pertain to intrastate communications service and are thus beyond the scope of the FCC's authority. Given the importance of the terminology in this case, we find it necessary initially to explain our understanding of the "LATA" concept and the difference between "local" and "toll" calls.

The acronym "LATA" stands for "local access and transport area," 47 U.S.C.A. § 153(25), and was initially adopted by the district court administering the 1982 consent decree that broke up AT&T. See United States v. Western Elec. Co., 569 F. Supp. 990, 993-94 (D.D.C. 1983). The consent decree divided the former Bell territory into geographic units known as "LATAs." Id. The 1982 consent decree limited LECs' transportation of telecommunications to traffic between points within a LATA, i.e., "intraLATA" traffic, while traffic between telephones located in two different LATAs, i.e. "interLATA" traffic, was allotted to long-distance carriers such as AT&T, MCI, and Sprint. The boundaries of LATAs generally center around cities or other identifiable communities of interest; in some instances, one LATA encompasses an entire state. The United States is currently divided into 192 LATAs, and for the most part, LATAs do not cross state lines. (See Joint Br. of Intervenors in Support of the FCC at 9.) We are told that approximately 98% of all intraLATA calls are intrastate in nature. (Bell Atlantic Br. at 14.)

IntraLATA calls can be either "local" or "toll" calls, but interLATA calls are exclusively "toll" calls. Calls that remain within a caller's immediate local calling area

(a smaller geographic area within a LATA) are intraLATA local calls and are currently made without incurring any additional charge beyond the flat monthly rate that one pays for local phone service. Calls that are completed outside of a caller's local calling area are "toll" calls and a separate charge or "toll" is incurred for making these calls. See 47 U.S.C.A. § 153(48). A single LATA can and frequently does encompass more than one immediate local calling area. Thus "intraLATA" is not synonymous with "local." A call that is completed outside of the caller's immediate local calling area but within the same LATA is an intraLATA toll call, while a call that is completed outside of both the caller's immediate local calling area and his or her LATA is an interLATA toll call.

The FCC argues that because the rules refer to "LATAs" and because "LATAs" do not necessarily correspond to state boundaries, section 2(b), which removes intrastate communication services from the FCC's reach, is not relevant to the issue of the Commission's authority over dialing parity. Contrary to the FCC's assertion, however, the different nomenclature used in the FCC's dialing parity rules neither renders section 2(b) irrelevant nor weakens its effect with respect to this jurisdictional issue. The fact remains that approximately 98% of all intraLATA calls (local or toll) are intrastate in nature. The FCC itself has acknowledged that the vast majority of intraLATA calls are intrastate and not within its jurisdiction. See Notice of Proposed Rulemaking, In the Matter of Administration of the North American Numbering Plan, 9 FCC Rcd 2068, 2077 n.93 (1994). More importantly, we believe that section 2(b) preserves intrastate communications for state regulation regardless of what other labels may be applied to these communications. Although section 2(b) does not apply to the portion of intraLATA calls that are interstate in nature, it does apply to the portion of intraLATA calls that are intrastate in nature. Consequently, section 2(b) remains an obstacle that the FCC must overcome in order to save its intraLATA dialing parity rules from the petitioners' jurisdictional attack.

In Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 370, 377 (1986), the Supreme Court explained that section 2(b) "fences off" intrastate telecommunications

matters from FCC regulation and indicated that the 2(b) fence could be hurdled only by an unambiguous congressional grant of intrastate authority to the FCC or an express amendment to section 2(b) itself. The Court further stated that section 2(b) also operates as a rule of statutory construction requiring that nothing in the Act, which includes the 1996 amendments, be construed to provide the FCC with jurisdiction over intrastate telecommunications service. Id. at 376-77 n.5. The FCC and its supporting intervenors initially contend that merely the federal Act's application to intrastate telecommunications matters is sufficient to supply the Commission with the authority to regulate such matters, even in light of section 2(b). The Commission argues that it has plenary authority to implement all of the requirements of federal telecommunications statutes and that section 2(b) restricts only the Commission's ancillary authority. We previously rejected the same argument in Iowa Utils. Bd., 1997 WL 403401, at *7, and now, we do so again for the same reasons. Our reading of Louisiana indicates that a federal act must expressly apply to intrastate telecommunications matters and explicitly direct the FCC to implement the act's intrastate requirements before the Commission will have jurisdiction over intrastate telecommunications matters. While subsection 251(b)(3) does require dialing parity at the intrastate level, it makes no reference whatsoever to the FCC. See 47 U.S.C.A. § 251(b)(3). Without a clear grant of intrastate authority to the FCC, section 2(b) stands as a fortification against the Commission's intrusion into telecommunications matters that are intrastate in character.

Alternatively, the FCC argues that several statutory provisions supply the Agency with sufficiently straightforward grants of broad intrastate authority to enable the Agency to overcome section 2(b)'s limitation. The Commission claims that subsection 251(d)(1) directly grants the Agency authority to implement all of the requirements in section 251, including the dialing parity provision in subsection 251(b)(3). Subsection 251(d)(1) reads, "Within 6 months after February 8, 1996, the Commission shall complete all actions necessary to establish regulations to implement the requirements of this section." 47 U.S.C.A. § 251(d)(1). As we found in Iowa Utils.

Bd., 1997 WL 403401, at \*4, this subsection is merely a time limit on the Commission, directing it to complete expeditiously its rulemaking related to those portions of section 251 that expressly call for the Commission's involvement.  This provision does not authorize the FCC to issue intraLATA dialing parity rules, because the subsection addressing dialing parity, § 251(b)(3), does not mention the FCC.  We also reject the FCC's argument that its general rulemaking authority contained in subsections 201(b), 154(i), and 303(r) of the Communications Act is a legitimate source of jurisdiction for the Commission's intraLATA dialing parity rules.  The FCC's jurisdiction under section 201 is specifically limited to interstate or foreign communications services.  See 47 U.S.C. § 201(a).  Meanwhile, subsections 154(i) and 303(r) merely provide the FCC with ancillary authority to promulgate additional regulations that might be required in order for the Commission to meet its principal obligations contained in other provisions of the statute.  See id. §§ 154(i), 303(r); California v. FCC, 905 F.2d 1217, 1241 n.35 (9th Cir. 1990).  Neither 154(i) nor 303(r) supplies the FCC with additional substantive authority sufficient to overcome section 2(b).

The group of intervenors supporting the FCC argues that section 160 of the Act, 47 U.S.C.A. § 160, implies that the Commission has authority to issue regulations pursuant to the entire Act because this section allows the Commission to forbear from applying regulations or provisions of the Act.  They reason that the power to forbear from regulating necessarily presumes the power to regulate in the first place.  While this section does provide the Commission with the power to forbear from applying provisions of the Act, we believe that this power is limited to forbearing from applying those provisions that pertain to interstate telecommunications or the portions of the Act addressing intrastate telecommunications that also specifically call for the FCC's involvement such as subsection 251(b)(2) (number portability) or subsection 251(c)(4)(B) (prevention of discriminatory conditions on resale).  Section 160's general authorization allowing the FCC to forbear from applying provisions of the Act is not the type of straightforward and unambiguous grant of intrastate authority that lifts the FCC over the section 2(b) fence.  When Congress intends to vest the FCC with

-15-

intrastate authority, it is well aware of how to draft a statute that overcomes section 2(b). In the Telecommunications Act itself, one provision explicitly directs the FCC to "establish a per call compensation plan to ensure that all payphone service providers are fairly compensated for each and every completed <u>intrastate</u> and interstate call using their payphone. . . ." 47 U.S.C.A. § 276(b)(1)(A) (emphasis added). Neither section 160 nor any other provision in the Act supplies the FCC with such an explicit grant of intrastate authority over dialing parity. As we have stated, subsection 251(b)(3), the provision directly addressing dialing parity, makes no reference to the FCC, in stark contrast to several other subsections of the very same section of the Act, such as subsection 251(b)(2) (number portability) and subsection 251(e) (numbering administration), that expressly call for the FCC's participation in implementing their requirements. "`[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."' <u>Russello v. United States</u>, 464 U.S. 16, 23 (1983) (quoting <u>United States v. Wong Kim Bo</u>, 472 F.2d 720, 722 (5th Cir. 1972)). We believe the argument is even stronger when different subsections of the same section demonstrate the difference. We conclude that the Act's different treatment of dialing parity signifies Congress's intent to leave regulation of this matter to the states. <u>See</u> <u>Lindh v. Murphy</u>, 117 S. Ct. 2059, 2064 (1997) (finding that "a different intent explains the different treatment" of two provisions in the Antiterrorism and Effective Death Penalty Act of 1996).

The FCC's last hope of justifying its intraLATA dialing parity rules rests with subsection 251(g). Although not expressly addressing dialing parity, subsection 251(g) preserves all of the equal access obligations[5] and interconnection restrictions that existed prior to February 8, 1996 "under any court order, consent decree, or regulation,

---

[5]Dialing parity is considered to be a type of "equal access obligation." (<u>See</u> Joint Br. of Intervenors in Support of the FCC at 23-24.)

order, or policy of the Commission, until such restrictions and obligations are explicitly superseded by regulations prescribed by the Commission after February 8, 1996." <u>Id.</u> § 251(g). This subsection also provides that such obligations and restrictions are enforceable as regulations of the Commission. The FCC contends that the 1982 consent decree that broke up the former Bell monopoly contained intraLATA dialing parity requirements, in addition to interLATA ones, that the FCC is now authorized to supersede under subsection 251(g). While the court administering the consent decree did discuss matters related to intraLATA dialing parity and attempted to provide LECs with an incentive to allow intraLATA toll competition, <u>see</u> <u>Western Elec. Co.</u>, 569 F. Supp. at 1006; <u>United States v. Western Elec. Co.</u>, 569 F. Supp. 1057, 1108-09 (D.D.C.), <u>aff'd by</u> <u>California v. United States</u>, 464 U.S. 1013 (1983), the consent decree's provisions involving dialing parity pertained only to interLATA calls; the decree did not provide any specific intraLATA dialing parity rules. <u>See</u> <u>United States v. Western Elec. Co.</u>, 552 F. Supp. 131, 233 (D.D.C. 1982). In fact, the district court expressly stated that "intrastate as well as intra-LATA regulation is not preempted by the decree and, hence, that state regulatory bodies will control traffic within the LATAs themselves." 569 F. Supp. at 1005; <u>see</u> <u>also</u>, <u>Western Elec. Co.</u>, 569 F. Supp. at 1109 (explaining that a proposed intraLATA dialing parity rule to be included in the consent decree "would inappropriately override state regulators' authority to decide what intrastate calling arrangements are best suited to the public interest within their states."). Moreover, the FCC itself concedes that subsection 251(g) "contains no reference or cross reference to dialing parity or to section 251(b)(3)" and merely preserves the dialing parity requirements already imposed on incumbent LECs. Second Report and Order, ¶ 29. Consequently, subsection 251(g) does not authorize the FCC to issue dialing parity rules governing intraLATA telecommunications.

Finally, the petitioners point out that subsection 271(e)(2)(B) indicates that state commissions, not the FCC, have the authority to issue intraLATA dialing parity rules. In limiting a state's ability to require a Bell operating company to implement intraLATA toll dialing parity until the Bell company has received the authority to provide

-17-

interLATA services, this provision implies that jurisdiction to regulate intraLATA dialing parity rests with the states. See 47 U.S.C.A. § 271(e)(2)(B). The FCC maintains that this subsection merely reveals that the states and the Commission have parallel jurisdiction over dialing parity. As we have demonstrated above, however, section 2(b) fences off the intrastate aspects of intraLATA dialing parity from the FCC, thus refuting the Commission's theory of parallel jurisdiction. Consequently, we conclude that the FCC exceeded its jurisdiction in promulgating its dialing parity rules, 47 C.F.R. §§ 51.205-51.215 (inclusive), but we set aside such rules only to the extent that they pertain to intraLATA telecommunications traffic.[6]

## B. Numbering Administration Rule

The petitioners also challenge the FCC's method for recouping the costs of establishing numbering administration arrangements. Numbering administration involves the coordination and distribution of all telephone numbers in the United States. In particular, the incumbent LECs target the Commission's provision that allows carriers to deduct the amounts they pay to other carriers for telecommunications services and facilities from their gross revenues in calculating a carrier's portion of the costs involved in administering a numbering administration program. See 47 C.F.R. § 52.17(b). The petitioners contend that this rule violates the Act's requirement that

---

[6]Because section 2(b) prevents the FCC from having jurisdiction only over intrastate telecommunications matters, our decision to vacate the FCC's dialing parity rules does not apply to the extent that the Commission's rules govern the very small percentage of intraLATA, toll, interstate telecommunications. Our vacation order does include, however, the rules' application to the even smaller percentage of intraLATA, local, interstate calls, despite their interstate nature. See 47 U.S.C. § 221(b); Public Util. Comm'n of Texas v. FCC, 886 F.2d 1325, 1331 n.5 (D.C. Cir. 1989); North Carolina Utils. Comm'n v. FCC, 552 F.2d 1036, 1045 (4th Cir.), cert. denied, 434 U.S. 874 (1977). Because the petitioners limited their challenges to the intraLATA aspects of the FCC's dialing parity rules, we make no determination regarding the validity of the FCC's dialing parity rules as they apply to interLATA telecommunications.

numbering administration costs "be borne by all telecommunications carriers on a competitively neutral basis."  47 U.S.C.A. § 251(e)(2).  The petitioners claim that if state commissions[7] do not allow incumbent LECs to include their numbering administration costs in the prices they charge to their competitors for telecommunications services and facilities, the deduction will afford the incoming competitors a cost advantage and result in a noncompetitively neutral cost allocation method.  On the other hand, the parties appear to agree that if such costs are included in the prices that incumbent LECs are permitted to charge to their competitors, then the FCC's numbering administration rule would be valid.

Article III of the Constitution limits our jurisdiction to deciding actual cases or controversies that are ripe for review.

> The basic rationale of the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

State of Missouri v. Cuffley, 112 F.3d 1332, 1337 (8th Cir. 1997) (internal quotations and citations omitted).  Because the validity of this rule depends on the state commissions' determinations of the rates that incumbent LECs will be able to charge their competing carriers for interconnection, unbundled access, and other telecommunications services and facilities, and none of those determinations is before

---

[7]We recently held that state commissions have the authority to establish the prices that incumbent LECs may charge their competitors for interconnection, unbundled access, resale of services, and transport and termination of telecommunications traffic.  Iowa Utils. Bd., 1997 WL 403401, at *9.  Accordingly, the question of whether or not incumbent LECs will be permitted to include numbering administration costs in those prices will be decided by the state commissions.

us in this proceeding, we find that the alleged harm to the petitioners is speculative at this juncture and conclude that this issue is not ripe for review.

### III.

In sum, we vacate the FCC's dialing parity rules, 47 C.F.R. §§ 51.205-51.215, but only to the extent that they apply to intraLATA telecommunications and subject to the conditions noted above, see supra note 6 and accompanying text, and we find the Commission's numbering administration rule, 47 C.F.R. § 52.17, not ripe for review.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.