State of SOUTH DAKOTA, and M. Michael Rounds, Governor, Plaintiffs,

v.

Norman Y. MINETA, Secretary, United States Department of Transportation, Defendant.

No. CIV. 02–3034, 2003 D.S.D. 16.

United States District Court, D. South Dakota, Central Division.

Aug. 21, 2003.

John P. Guhin, Attorney General's Office, Pierre, for Plaintiffs.

James B. Cooney, U.S. Department of Justice, Indian Resources Section, Washington, DC, for Defendants.

## ORDER

KORNMANN, District Judge.

[¶ 1.] Plaintiffs brought this action, claiming that the defendant had taken final action to require the State of South Dakota ("State") to require highway contractors to pay (and charge to the State) occupational taxes levied by Indian tribes. The taxes are levied in connection with highway construction or repair projects on State highways which traverse Indian reservations. Plaintiffs ask this court to declare that the defendant has no such authority and may not withhold federal highway funds because of State action to not honor and reimburse highway contractors for such tribal occupational taxes. No Indian tribe is a party.

[¶ 2.] Defendant filed a motion to dismiss (Doc. 7). The parties have extensively briefed the issues. Defendant advances a number of claims. First, there is no "final" agency action at issue and, in the absence of final action, the Administrative Procedure Act (5 U.S.C. § 701 *et seq.*) does not permit court review. Second, the case is not ripe for judicial review. Third, the State has no standing, having suffered no injury caused by the defendant. Fourth, the State has failed to allege a genuine case or controversy. Fifth, the defendant is protected by sovereign immunity in this action.

[¶ 3] Plaintiffs have not alleged in their complaint that this action is brought pursuant to the Administrative Procedure Act. Rather, they allege that the court has jurisdiction to determine a federal question (28 U.S.C. § 1331). They seek a declaratory judgment (28 U.S.C. § 2201). The Declaratory Judgment Act does not waive the sovereign immunity of the United States.

[¶ 4] The arguments of the defendant largely boil down to a consideration of the ripeness doctrine.

"The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir.2000). The doctrine seeks " 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The ripeness inquiry re-

quires examination of both the " 'fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.' " *Id.* at 1038 (quoting *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507). To be ripe for decision, the harm asserted must have matured enough to warrant judicial intervention. *Johnson v. Missouri,* 142 F.3d 1087, 1090 n. 4 (8th Cir.1998). The plaintiffs need not wait until the threatened injury occurs, but the injury must be " 'certainly impending.' " *Employers Ass'n v. United Steelworkers AFL–CIO–CLC,* 32 F.3d 1297, 1299 (8th Cir.1994) (quoting *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)).

*Paraquad, Inc., v. St. Louis Housing Auth.,* 259 F.3d 956, 958 (8th Cir.2001).

[¶ 5] Another excellent and more detailed discussion of the doctrine is found in the case cited with approval in *Paraquad,* namely *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.,* 234 F.3d 1032 (8th Cir.2000). Although already partly quoted above, Judge Pasco Bowman wrote, beginning at page 1037:

> The ripeness doctrine flows both from the Article III "cases" and "controversies" limitations and also from prudential considerations for refusing to exercise jurisdiction. *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). Its "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). It requires that before a federal court may address itself to a question, there must exist "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypo-

thetical or abstract." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (quoting *Railway Mail Ass'n. v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945)). Parties may not simply submit questions of general interest or curiosity to the federal court. *See, e.g., Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 244, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

> While elegant-sounding in theory, judicial ripeness often proves something of a cantaloupe. "The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test." *Babbitt,* 442 U.S. at 297, 99 S.Ct. 2301. The Supreme Court has directed that the ripeness inquiry requires examination of both the "fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507; *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n.,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983).

> The "fitness for judicial decision" inquiry goes to a court's ability to visit an issue. In appeals from administrative regulation, the fitness prong questions finality and exhaustion. *See, e.g., Lane v. USDA,* 187 F.3d 793, 795 (8th Cir. 1999). More generally, however, it safeguards against judicial review of hypothetical or speculative disagreements. *Babbitt,* 442 U.S. at 297, 99 S.Ct. 2301; *State of Missouri ex rel. Missouri Highway & Transp. Comm'n v. Cuffley,* 112 F.3d 1332, 1337 (8th Cir.1997). While courts shy from settling disputes contingent in part on future possibilities, certain cases may warrant review based on their particular disposition. *Shalala v. Illinois Council on Long Term Care, Inc.,* 529 U.S. 1, 120 S.Ct. 1084, 1093,

146 L.Ed.2d 1 (2000). Exception may be had where an issue is largely legal in nature, *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507, may be resolved without further factual development, *Pacific Gas,* 461 U.S. at 203, 103 S.Ct. 1713, or where judicial resolution will largely settle the parties' dispute, *Ernst & Young v. Depositors Econ. Prot. Corp.,* 45 F.3d 530, 539–40 (1st Cir.1995). *See also Cuffley,* 112 F.3d at 1333–34, 1337–38 (refusing to address a First Amendment challenge to the Ku Klux Klan's proposed participation in a state highway sponsorship program where the state sought judicial review prior to actually rejecting the Klan's application).

In addition to being fit for judicial resolution, an issue must be such that delayed review will result in significant harm. "Harm" includes both the traditional concept of actual damages-pecuniary or otherwise-and also the heightened uncertainty and resulting behavior modification that may result from delayed resolution. *Ohio Forestry Ass'n., Inc. v. Sierra Club,* 523 U.S. 726, 733–34, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). For example, in *Pacific Gas,* the Court stressed the financial impact that delayed adjudication would have on the petitioning utilities and the rate-paying public by forcing them to gamble millions of dollars on an uncertain state of law. 461 U.S. at 201–02, 103 S.Ct. 1713; *accord Ernst & Young,* 45 F.3d at 537 ("[C]ourts should not become mired in the frequently sophistic distinction as to whether refusing declaratory relief will actually impose a hardship or merely fail to confer a benefit.") A party need not wait for actual harm to occur. *South Dakota Mining Ass'n v. Lawrence County,* 155 F.3d 1005, 1008–09 (8th Cir. 1998). However, both the immediacy and the size of the threatened harm

impact the ripeness calculus-they must be significant.

As ripeness combines the constitutional and the prudential, it is unclear whether "fitness" and "significant harm" constitute a two-part test or two independent bases for ripeness. Some circuits have held that both prongs must be satisfied in order for an issue to be ripe. *See, e.g. Ernst & Young,* 45 F.3d at 535; *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1581 (Fed.Cir.1993); *Western Oil & Gas Ass'n v. Sonoma County,* 905 F.2d 1287, 1291 (9th Cir.1990). Other circuits have noted the dispute. *See, e.g., Philadelphia Fed'n of Teachers v. Ridge,* 150 F.3d 319, 325 n.7 (3rd Cir. 1998); *Nutritional Health Alliance v. Shalala,* 144 F.3d 220, 226 n. 12 (2nd Cir.1998). We have not previously addressed the question.

A party seeking judicial relief must necessarily satisfy both prongs to at least a minimal degree. Judicial resolution of a legal question fit for judicial review yet portending no immediate hardship would constitute little more than a law review article. Conversely, to resolve an issue lacking factual development simply to avoid a threatened harm would be to favor expedition over just resolution. *See, e.g., Cuffley,* 112 F.3d at 1337–38 (refusing to address First Amendment arguments prior to state's actually taking proposed course of action). Such is not to say that we may adjudicate only purely legal issues threatening extravagant injuries. Rather, the two prongs must play off each other. *Ernst & Young,* 45 F.3d at 535 (acknowledging that the two ripeness branches must operate on a sliding scale). In *Pacific Gas,* for example, the court held ripe a preemption challenge to a state statute that barred construction of additional nuclear facilities until development of sufficient long-term

spent fuel storage. 461 U.S. at 200–02, 103 S.Ct. 1713. While the challenged statute had yet to be applied, the question presented was purely legal, the nature of the challenge required no further factual development and the resulting legal uncertainty placed millions of dollars in investment at risk. *Id.* Somewhere between Scylla and Charybdis lie cases appropriate to judicial resolution.

\*　　\*　　\*　　\*　　\*　　\*

Finally, we note that "[r]ipeness is peculiarly a question of timing" and is governed by the situation at the time of review, rather than the situation at the time of the events under review. *Anderson v. Green*, 513 U.S. 557, 559, 115 S.Ct. 1059, 130 L.Ed.2d 1050 (1995) (quotations omitted).

■ [¶ 6] I am convinced of a number of things. First, there is no final agency action. Defendant started down that road with the letter of August 20, 2002, but then retreated, if you will, with the letter of September 3, 2002. We do not know what the final decision of the federal agency will be. Obviously, a federal agency presented with issues to decide should timely decide them rather than keeping interested parties in limbo. At some point, a failure to act may become actionable. That point has not yet been reached. Second, the defendant has not ordered the State to pay so-called TERO fees to the Rosebud Sioux Tribe or any other tribe. The agency has certainly expressed the opinion that the State should pay or reimburse the fees but, at this point, such opinion is nothing but a wish or unsolicited advice. The agency has certainly adopted a policy that federal funds may be used to pay, in part, the TERO fees. The State has no standing to complain about such federal policy. Third, the defendant has not violated any statute. Fourth, at this point, the State has sustained no injury caused by the de-

fendant. No federal highway funds have been withheld. There has not even been the threat to withhold such funds. This case is simply not ripe for judicial review. This court will not render an advisory opinion at this juncture. It would be entirely premature for this court to become entangled in what is nothing, at this point, other than an abstract disagreement as to proper public policy. It is clear that the State may decide to not honor the TERO fees and to order highway contractors to not pay the fees. What may happen then is unknown and subject to speculation. Apparently, the State has not taken such course of action.

■ [¶ 7] There are other reasons why the motion to dismiss should be granted. Normally, federal district courts have what has been called the virtually unflagging obligation to exercise the jurisdiction given to such courts. Declaratory relief, however, is based on equitable considerations. Relief is discretionary. "Even where a justiciable controversy has been shown to exist, federal courts have discretion to decline to exercise their jurisdiction." *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1217 (7th Cir.1980). We know that 28 U.S.C. § 2201 provides that courts "may" declare rights. "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). The law in the Eighth Circuit is also clear in this regard.

The district court was not required to exercise jurisdiction over the present action if, under the particular circumstances presented to the court, it determined that the action ought not to proceed at this time. Although the Declaratory Judgments Act, 28 U.S.C.

§ 2201, gives federal courts jurisdiction to entertain actions seeking merely declaratory relief, such jurisdiction is not mandatory. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Rather, the federal courts' power to exercise jurisdiction over declaratory judgment actions is discretionary. *State Farm Mut. Auto. Ins. Co. v. Bonwell*, 248 F.2d 862, 865 (8th Cir.1957). Discretionary power, as used within the context of "declaratory judgment actions, refers to the power exercised by the courts to determine questions to which no strict rule of law is applicable, but which, from their nature and circumstances, are controlled by the court's personal judgment." *Id.* at 866.

*Aetna Cas. and Sur. v. Jefferson Trust and Sav.*, 993 F.2d 1364, 1366 (8th Cir. 1993).

[¶ 8] The State is, in effect, asking this court to strike down TERO fees imposed by various tribes without those tribes being parties to this litigation. The State is asking this court to order a federal agency to stop doing something they have not yet started doing. I respectfully decline to take either course of action, at least at this point. While I am not in the business of giving unsolicited advice to state government, I take into account the fact that the State has apparently refused to follow the suggestion made by the federal agency, that being to confer with the tribes to seek a resolution of the issues without federal intervention. Perhaps that would aid in the process of reconciliation.

[¶ 9] Now, therefore, for the reasons stated,

[¶ 10] IT IS ORDERED, as follows:

1) The motion of the defendant (Doc. 7) is granted.

2) This action is dismissed, without prejudice and without the taxation of costs.